## STATE v. REDDINGTON.

1. Where the record shows that a defendant, regularly indicted for a felony, is present in court in person and by counsel, announces himself ready for trial, goes to trial without objection, and submits to the jury the

question of guilt, upon a trial regularly conducted, as upon a plea of "not guilty," it is not ground for reversal, under our statutes, that the record does not affirmatively show that the defendant was arraigned, or that he pleaded. FULLER, J., expressing no opinion.

2. Whether the order in which the peremptory challenges were made under the direction of the court was exactly that contemplated by the statute is not of controlling importance, or available to defendant as error, where the record expressly shows that he accepted the jury with a large number of his peremptory challenges unused.

3. While it is not ordinarily error for the trial court to allow the examination of other witnesses than those whose names are indorsed on the inindictment, yet the state ought not to be permitted to purposely withhold from the defendant the names of such witnesses whom it expects to examine; and the trial court would be justified in protecting a defendant, under such circumstances, from unfair disadvantage therefrom.

4 Whether a boy 11 years of age has such ability to discriminate between right and wrong, and such understanding of his duty and obligation as a witness to tell only what is true, as to make him a competent witness, is left in the first instance to the discretionary judgment of the trial court, after informing itself by proper examination.

5. Where an indictment for murder contains but one count, and that charges the crime to have been committed with a premeditated design to effect the death of the person killed, as in subdivision 1 of section 6442, Comp. Laws, it is reversible error to instruct the jury that the premeditated design need not be proved, but that the jury may convict if they find that the act of the defendant resulting in the death of the deceased was an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, as in subdivision 2 of said section, although without any premeditated design to effect the death of any particular individual.

(Syllabus by the Court.   Opinion filed August 24, 1895.)

Error to circuit court, Codington county.   Hon. J. O. AN-DREWS, Judge.

James Dempsey Reddington, having been convicted of murder, brings error.   Reversed.

The facts are stated in the opinion.

*Glass, Weeden & Hanten* and *Bennett & Sheldon* for plaintiff in error.

Any omission or failure in the record to show that a defendant was properly arraigned and that his plea of guilty or not

guilty was entered before the trial cannot be cured by any subsequent corrections or insertions. 10 Am. and Eng. Enc. Law, 528; McQuillen v. State 16 Miss, 587; Com. v. Roby, 29 Mass. 496. In a criminal case the accused should be informed by the prosecution of the names of the witnesses who will be called to testify against him. People v. Quick, 25 N. W. 302; Gales v. People, 14 Ill. 435.

Coe I. *Crawford*, Attorney General, *Lee Stover*, States Attorney, *C. X. Seward* and *C. E. DeLand* for defendant in error.

When a defendant has not exhausted his peremptory challenges he cannot be heard to claim a reversible error on the part of the trial court in the matter of the selection of the jury. Minch v. People, 8 Colo. 440; Erwin v. State, 29 Ohio 186; State v. Elliott, 45 Ia. 486; State v. Lawlar, 28 Minn. 216; State v. Davis, 41 Ia. 311; McGowan v. State, 9 Yerg. 184; Stewart v. State, 13 Ark. 70; Wilson v. People, 94 Ill. 299; Herbert v. Railroad, 3 Dak. 38. The prosecution may adduce witnesses at trial whose names are not endorsed upon the indictment if they were not examined before the grand jury at the time the indictment was found and without any notice to the accused of the intention of the prosecution to call said witnesses. Dakota v. Godfrey, 6 Dak. 46; State v. Abrahams, 6 Ia. 117; State v. McClintoch, 8 Ia. 205; State v. Pierce, 8 Ia. 538; Keener v. State, 18 Ga. 194; People v. Joscelyn, 29 Cal. 562; State v. O'Day, 89 Mo. 559; State v. McKinney, 31 Kan. 570; State v. Cook, 30 Kan. 82; State v. Kepper, 65 Ia. 745; Sogg v. People, 92 Ill. 598; State v. Boughner, 59 N. W. 736; State v. Church, 60 N. W. 143.

A child of any age may be a witness, if capable of distinguishing between good and evil. State v. Whittier, 21 Me. 341; Hawkins v. State, 27 Tex. 273; Hughes v. Railroad, 65 Mich. 11. Where there is no plea, but a trial is had, the objection that there was a trial without a plea must be made in the trial court, or it will be deemed waived. Shaffer v. State, 93 Ind, 519. Billings v, State, 107 Ind. 54,

KELLAM, J.   Plaintiff in error was convicted in the Codington county circuit court of the crime of murder, and sentenced to imprisonment for life.   The case is here upon writ of error.

Considering the matters complained of in the order in which they occurred chronologically, we notice that the record nowhere states or affirmatively shows that the defendant, now plaintiff in error, was arraigned, or that he pleaded to the indictment.   The statute requires that the defendant shall be arraigned (Compiled Laws § 7263); that he shall plead, and that his plea shall be entered on the minutes of the court, or, if he refuse, that a plea of not guilty shall be so entered (Id. §§ 7301–7303, 7311).   If the defendant was not in fact arraigned, and did not plead, it was a grave oversight on the part of the court.   If he was arraigned, and did plead, it was careless in the clerk not to have entered the fact and the plea.   But the practical question now is, what is the legal effect either of such omission in fact or of such defect in the record?   There are many reported cases of high authority squarely holding that omission to plead, or failure of the record to affirmatively show that the defendant was arraigned, and did plead, are, upon review, fatal to a judgment of conviction; and such seems to be the established rule of the common law.   Our own judgment, fortified by many thoroughly considered and well reasoned cases from courts commanding high respect, leads us to the conclusion that, under the law as it is in this jurisdiction, this ought not to be held an imperious and inelastic rule.   We should say that it was error to try a defendant without arraignment and plea, and that a record is defective which does not affirmatively show such procedure was had; but error does not always justify reversal.   Injury is presumed from error, but the presumption is undermined and destroyed by the positive showing, by the record itself, that injury did not and could not result from such error.   By "injury" is meant "effect upon the result."   This is the well-defined doctrine of our statute, which allows the defendant to except "to the decision of the court upon a matter of law by which his substantial rights are prejudiced, and not otherwise" (Comp.

Laws, § 7439), and which requires this court, on writ of error "to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties" (Id. § 7520). In this case the record does show that the defendant was present in court personally and by his counsel, and thas he was ready for trial, and that the trial proceeded precisely as though the minutes of the court showed a plea of "not guilty." In State v. Green, 66 Iowa 11, 23 N. W. 154, the defendant did not plead, the taking and entering of his plea having been overlooked by the court, and yet the appellate court refused to reverse a judgment of conviction. It said: "The case was treated, however, at every stage of the proceedings, and by all of the parties, as though a plea had been entered. The allegations of the indictment were all regarded as having been denied by the defendant. The state was required to establish the charge in the indictment by the same character of evidence, and with the same certainty, which would have been required if the formal plea of not guilty had been entered. The defendant was permitted to introduce evidence to disprove the charge, and his counsel was permitted to argue the case to the jury on its merits, and the jury were required to determine it under the same rules which would have governed in its determination if the plea had been formally entered." And this ruling was followed in State v. Hayes, 67 Iowa 27, 24 N. W. 575, and again in State v. Bowman, 78 Iowa 519, 43 N. W. 302. In People v. Tower (Sup.) 17 N. Y. Supp. 395, the record did not show arraignment, or that defendant pleaded, or that any plea was entered for him. The court held that "there was nothing in these omissions which tended to prejudice the rights of the defendant, and consequently they should be disregarded."

The record in State v. Cassady, 12 Kan. 550, was the same as in the present case, it showing no arraignment or plea, but that defendant was present in person and by counsel, and was ready for trial, and that the case was regularly tried. The court, after reciting the statute, which is substantially the same as our section 7520, above referred to, held that "the omission did not and could not

affect the substantial rights of the defendant, and therefore is not ground for disturbing the judgment." In Hayden v. State, 55 Ark. 342, 18 S. W. 239, upon the same ground and for the same reasons which are perspicuously stated in the opinion, it is held that, "where no prejudice appears upon the record, a conviction of a felony will not be set aside because the defendant was tried without arraignment or plea, if the cause was treated as at issue upon the plea of not guilty." Allyn v. State, 21 Neb. 593, 33 N. W. 212 was a similar case. The opinion says: "While the proceeding was irregular, yet there was no prejudicial error, and the judgment cannot for that reason be reversed." The state courts of Missouri have persistently held otherwise, but Chief Justice HENRY, in State v. Vanhook, 88 Mo. 155, while adhering to the established rule in that state, significantly says: "After the jury is sworn and the trial proceeds, and all the testimony relates to the guilt or innocence of the accused in a misdemeanor case, it looks like trifling with justice to reverse the judgment because the record fails to show an arraignment or a plea of not guilty;" and in a case from that state in the federal court (U. S. v. Molloy, 31 Fed. 19) Judges BROWN and THAYER refused to follow the rule of the Missouri courts. They held that, under the federal statute (Rev. St. § 1025) that "no indictment found and presented by a grand jury shall be deemed insufficient, nor shall the trial, judgment, or other proceeding be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant," the failure of the trial court to arraign the defendant and take his plea was "an irregularity in the proceeding which could not possibly have tended to the defendant's prejudice," and overruled the motion for a trial. In territory v. Shipley, Pac. 313, the Montana supreme court refused to reverse a judgment of conviction on the ground that the record did not show that defendant was arraigned or pleaded. In Maxwell's Criminal Procedure, at page 541, the author says: "A party who personally and by his consent voluntarily goes into court, practically on a plea of not guilty, should not, after verdict, be permitted

to assign as a reason for setting aside the verdict that he was not asked to say whether he was guilty or not guilty before the trial. He has had the benefit of the plea of innocence in his favor, and has been prejudiced in no right."

We have drawn upon these authorities quite fully, and it is probable that further research would discover others on the same line to justify our conclusions that we ought to follow the rigid rule of the common law under the plain instruction of our statute that judgment of conviction must not be reversed on account of error which does not prejudice the substantial rights of the defendant. Neither civil nor criminal cases are tried for the primary purpose of vindicating or exemplifying formulated rules of law or practice. The object of every trial is to get at the very right of the matter in controversy. Rules are intermediate and subsidiary to that end, and nonobservance of an incidental rule, not made mandatory by statute, which obviously did not in any manner interfere with the acccomplishment of the very objective end of the trial, and so could work no injury to the defendant, is no ground for setting aside the result of such a trial. In this case the record shows that the case was regularly reached for trial; that defendant was present in person and by counsel; that he was ready for trial; that the trial proceeded and continued to verdict, without objection, in every respect as though a plea of "not guilty" had been made and properly entered; and that the jury was instructed that the defendant had plead "not guilty," and the nature and effect of such plea fully explained by the court to the jury. Under these circumstances, we hold, after much deliberation, that the failure of the record to affirmatively show arraignment and plea does not entitle defendant to a new trial.

It is next complained that the trial court erred in its ruling fixing the order in which the right of peremptory challenge should be exercised. Whether the order in which the peremptory challenges were made under the direction of the court was exactly that contemplated by the statute, or not, does not seem to us to be of controlling materiality, as it affirmatively appears by the record

that while the defendant was entitled to 20, he used only 11, such challenges, and accepted the jury and went to trial with 9 of his peremptory challenges unused. Under these circumstances, we are unable to see how defendant could have been prejudiced. It must be presumed that the jurors by whom he was tried were unobjectionable to him, for he made no attempt to use his unexhausted challenges against any or either of them. See Erwin v. State, 29 Ohio St. 186; State v. Lawlor, 28 Minn. 216, 9 N. W. 698; Wilson v. People, 94 Ill. 299; State v. Davis, 41 Iowa, 311; State v. Hoyt, 47 Conn. 518; People v. Mcgungill, 41 Cal. 429; State v. Gaffney, 56 Vt. 451. It is true this question has generally come up where the trial court has disallowed a challenge for cause, but the ruling in the appellate court is uniformly based upon the ground that the unused peremptory challenges disprove any injury to the defendant in the composition of the jury, and the argument is equally conclusive upon the facts before us.

It is further assigned as error that the state was allowed, over defendant's objection, to introduce witnesses whose names were not indorsed on the indictment. This question was considered by this court, and ruled upon adversely to the contention of plaintiff in error, in State v. Church (S. D.) 60 N. W. 143, and although upon rehearing the decision there reported was subsequently reversed (see 64 N. W. 152), such reversal was entirely upon other grounds, and the original opinion stands as the general law in this jurisdiction, following State v. Boughner (S. D.) 59 N. W. 736, and Territory v. Godfrey, 6 Dak. 46, 50 N. W. 481. We do not think, however, that the state should be allowed to practice upon or take advantage of a defendant by purposely withholding from him notice or knowledge of the names of witnesses whom it intends to use against him on the trial; but, having no statue, as some states have, requiring notice to defendant as a condition precedent to the calling by the state of witnesses whose names are not indorsed on the indictment, we think the question of allowing or disallowing the use of such witnesses ought to be left largely to the wise discretion of the trial court, to determine

upon the circumstances of the case as they are made to appear to it. In this case it appears, inferentially at least, that the state knew from one day to a week before the trial that it would probably use these witnesses. Fairness toward the defendant would seem to require that he should have notice, so that he might not only be prepared to meet as best he could the particular evidence they might give, but to canvass the character and reputation of such witnesses, with a view of satisfying the jury, if he could, that their testimony should have little or no weight with them; and while we are all agreed that we should have been better satisfied of the fairness of these proceedings if the state had given notice to defendant as early as practicable of its intention to use such witnesses, and now intimate that the case would have to be but little stronger to justify a review of the court's decision in this respect, a majority of the court is not prepared to say that the court misused its discretion in this case.

During the trial, Charlie Messerschmidt, a boy 11 years of age, was produced as a witness on behalf of the state. After a preliminary examination as to his qualification as a witness, defendant objected to his testifying upon the grounds which have already been considered and disposed of, and upon the further ground that his examination showed that he did not understand the nature of an oath, and was therefore incompetent. The court allowed him to testify, and this is assigned as error. Though attempted at an early day, both in England and in this country, and it was found impossible to fix a certain age limit below which a child was not qualified as a witness, and for many years it has been the settled rule, except where modified by statute, that a child of any age capable of distinguishing between good and evil may be examined on oath. No witness, whether child or adult, is required to be able or willing to discuss with the court or counsel either the fact or condition of a future state. He may even have no established views of general theology. He is is only required to be able to distinguish the moral difference between right and wrong; and, when the law or the court says he must understand the obligation

of an oath, it means only that, possessing such ability to discriminate, he understands that his position as a witness imposes upon him the moral and legal duty to tell only what is true. Whether a witness is so qualified is left in the first instance to the discretionary judgment of the trial court, after informing itself by proper examination. See 1 Greenl. Ev. § 367; State v. Whittier, 21 Me. 341; 38 Am. Dec. 272; McGuire v. People, 44 Mich. 286, 6 N. W. 669; Hawkins v. State, 27 Tex. App. 273, 11 S. W. 409. We could not justify ourselves in holding that the trial court misused its discretion in accepting this boy as a witness, and allowing his testimony to go to the jury.

The only remaining assignment argued by counsel is that the trial court erred in its instruction to jury. Our Penal Code defines murder as follows: "Homicide is murder in the following cases: (1) When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being. (2) When perpetrated by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual. (3) When perpetrated without any design to effect death by a person engaged in the commission of any felony." Comp. Laws, section 6442. The indictment contained but one count, which, omitting formal parts, was as follows: "That one James Dempsey Reddington, then and there a human being, late of said county, did, at and in the county of Codington, and in the state of South Dakota, on the thirty-first day of December, in the year of our Lord one thousand eight hundred and ninety-three, unlawfully, feloniously, premeditatedly, and with malice aforethought shoot at Jeremiah E. Kelly with a deadly weapon, to wit, a shotgun loaded with powder and leaden balls, then and there held in the hands of the said James Dempsey Reddington, with intent then and there unlawfully, feloniously, premeditatedly, and with malice aforethought to kill the said Jeremiah E. Kelly, and did then and there with said deadly weapon,

to wit, said shotgun loaded with powder and leaden balls, unlaw-
fully, feloniously, premeditatedly, and with malice aforethought
shoot, kill, and murder the said Jeremiah E. Kelly; the said Jere-
miah E. Kelly then and there being a human being. And so the
grand jurors aforesaid, upon their oaths aforesaid, do say that the
said James Dempsey Reddington him, the said Jeremiah E. Kelly,
in the manner aforesaid, at the time and place aforesaid, unlaw-
fully, purposely, feloniously, and of deliberate and premeditated
design and malice did kill and murder, contrary to the form of the
statute in such case made and provided, and against the peace and
dignity of the state of South Dakota." The court instructed the
jury that they might find the defendant guilty, although they
found no premeditated design to effect the death of any particular
individual, if they should find that the death of the deceased was
the direct result of an act of defendant imminently dangerous to
others, evincing a depraved mind, regardless of human life. To
fully illustrate the theory of the instructions, we quote: "It is not
necessary in all cases that there should have been a premeditated
design to effect the death of the person killed. The law is, as pre-
viously defined in these instructions, that the act constitutes mur-
der when perpetrated by an act imminently dangerous to others,
and evincing a depraved mind, regardless of human life, although
without any premeditated design to effect the death of any par-
ticular individual." "And if you believe from the evidence, be-
yond a reasonable doubt, that the act committed by the
defendant if you find it was committed, was an act im-
minently dangerous to others, and evincing a depraved
mind, regardless of human life, although without any pre-
meditated design to effect the death of any particular in-
dividual, then, in that event, your verdict should be that
you find the defendant guilty as charged in the indictment." The
question is therefore squarely presented whether, under an indict-
ment containing but one count, and that charging murder with a
premeditated design to effect the death of the person killed, the
jury may convict of murder, if satisfied that the death of the de-

ceased was caused by an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, but without any premeditated design to effect the death of the person killed. This provision defining the different conditions under which homicide constitutes murder was enacted by the territorial legislature as a part of the Penal Code then passed, in 1865, and was evidently taken from New York. Prior to such adoption here, this provision had been the subject of discussion and judicial interpretation by the highest court of that state in at least two reported cases. People v. White, 24 Wend. 520, and Darry v. People, 10 N. Y. 120.

The rule is general, almost imperative, that where one state adopts the statute of another state it takes it impressed with the meaning and construction which had been judicially given it at the time of its adoption. We should feel like paying great respect to this rule even if our own judgment led us to a different conclusion as to the meaning and intent of this law, but, after much thought and patient examination, it seems to us to be right. One purpose of an indictment is to apprise the defendant of what he is charged with having done that constitues a criminal offense, so that he may be prepared to defend himself at the trial. It is not sufficient to charge him generally with murder or larceny but the indictment must show when and where and how it was done, so that he, knowing with reasonable certainty what the state will attempt to prove, may prepare to meet such case. Here the indictment charged that the defendant shot at the deceased with premeditated intent then and there to kill him, and did then and there so kill him with premeditated design and malice. The statute sets forth and defines several distinct kinds of murder, and this indictment, containing but the one count, evidently was intended to, and plainly does, charge murder of the kind defined in the first subdivision of said Section 6442. CHITTY describes an indictment as a brief narative of the offense charged, which must contain a certain description of the crime and the facts necessary to constitute it. This indictment does this, and charges the kind of mur-

der and the conditions named in said first subdivision; but the jury was instructed that under such indictment they might find the defendant guilty as charged in such indictment, although they did not find the conditions so named to exist, if they found that other conditions did exist, which, by another subdivision, would also constitute murder, and although such latter conditions were nowhere charged or suggested in the indictment. If this instruction was correct, then it would be correct under just such an indictment as this, charging a fatal shooting with the premeditated design of killing the person so shot at, to receive evidence of the killing by shooting, without any design to effect death, by a person engaged in the commission of a felony; for such conditions, by subdivision 3 of the same section, also constitute murder. In each case the offense charged would be the same in name only. They would be different in fact and different in their constituent elements.

The indictment charged the defendant with a particular species of murder described in the statute, and whose elements were therein specifically enumerated and correspondingly set out in the indictment. The instruction told them that, although no such elements were proved, they might still find the defendant guilty as charged, if they found other elements to exist not named or charged in the indictment, but which would constitute murder of another species than that charged in the indictment. Thus, the defendant, called upon to defend himself only against a charge of shooting Kelly with a premeditated design to kill him, would be just as liable to be convicted of murder by a showing that he caused his death without any such design, but by an act imminently dangerous, and evincing a depraved mind, regardless of human life, or by a showing that without any design to kill any body he accidentally did so when engaged in the commission of a felony; for either of these conditions would, under one or another of these subdivisions, constitute murder. The indictment charged a murder of a specific class, and set forth the distinctive legal characteristics of such a murder and that was the crime, and the kind of

a crime, for which he was being tried.   A plea of not guilty put
only the allegations of the indictment in issue, and such allegations
charged killing with express malice towards the deceased, and with
a premeditated design to effect his death; and in our judgment it
was error to charge the jury that, in order to convict, it was not
necessary for the state to make out such a case as it had set out in
the indictment.   This was evidently the view of the territorial su-
preme court, for in a very carefully prepared opinion in Territory
v. Bannigan, 1 Dak., at page 451, 46 N. W. 597, BENNETT, J., says:
"If the indictment charge, in the language of the first subdivision
the homicide to have been perpetrated with a premeditated, design
to effect death, the premeditated design, or express malice, must be
proved.   People v. White, 24 Wend. 520.   And from this it would
seem to follow that in such a case the defendant could not be con-
victed on evidence of implied malice, though coming clearly with-
in the provisions of the second or third subdivision."   This ques-
tion is so fully discussed in the New York cases referred to, gen-
erally in 34 Wend., and more critically and analytically in 10 N.
Y., that we do not pursue it further, except to quote the pertinent
language of PARKER, J., in the latter case:   "If this case was prop-
erly submitted to the jury as falling under the second subdivision
of murder, so might a case be thus submitted where death was
caused without design by a person engaged in a felonious assault
upon the person killed, which is one of the cases expressly pro-
vided for in the third subdivision.   But the construction I have
put on the second subdivision confines each subdivision to a dis-
tinct class of cases, and renders it entirely inapplicable to any
other."

A somewhat different interpretation was given this statute in
Hogan v. State, 36 Wis. 226.   Chief Justice RYAN admitted the
difficulty of reaching an entirely satisfactory interpretation of
these subdivisions, and that court was evidently considerably in-
fluenced by the fact that their law, unlike the New York law, or
our own, divided murder into degrees. providing a different grade
of punishment for each degree, and the court seemed unwilling to

adopt a construction that would not in any case allow a murder whose perpetration evinced a fiendish disregard of human life and an utterly depraved and wicked mind, but without the premeditated design to effect the death of any particular individual, to be punished as a murder of the first degree.  The court, after referring to "so vital a difference" between this law and that of New York, and remarking that "the second definition of the New York Statute was not interpreted by the courts of that state when our statute was not adopted," says:   "There seems to be a strong presumption that, borrowing the language of the New York statute, the legislature of this state took it in a sense of its own, different from the sense in which it seems to have been used in New York. It seems to be an unjust presumption that the two legislatures put the same construction on the language used; when the one made all the definitions one crime, with the one dread penalty which is the extreme of human punishment, and the other made them three different degrees of crime, with three momentously different rules of punisment.  This is an additional reason why we should not follow the construction of the New York courts, if, in our view, we can find a different construction, satisfactory to us, and more harmonious with the legislative purpose in the distribution of the crime into degrees."  We are of the opinion that in the respect indicated the charge of the court was erroneous.  The judgment is reversed and a new trial awarded.

FULLER, J.   I prefer to base my concurrence solely upon the ground last stated and discussed in the opinion.