## STATE V. HUBBARD.

Under Rev. Code Cr. Proc. §§ 408, 409, providing that, whenever a crime is distinguished into degrees, the jury, if they convict, must find the degree of the crime of which defendant is guilty, it is indispensable, on trial for murder, that the jury designate the degree of the crime.

Where, in a prosecution for homicide, the jury, if defendant's evidence was believed, might have found the killing justifiable, or that defendant was guilty, at most, of manslaughter in the second degree, it was error to refuse to charge on the latter offense; the jury, on a charge of manslaughter, being entitled to convict of either degree thereof.

Haney, J., dissenting.

(Opinion filed, Oct. 24, 1905).

Error to Circuit Court, Beadle County. Hon. CHAS. S. WHITING, Judge.

H. L. Hubbard was convicted of manslaughter in the first degree, and he brings error. Reversed.

*Crawford & Taylor* and *W. A. Lynch,* for plaintiff in error. *Philo Hall, Atty. Gen.,* and *C. A. Kelley, State's Attorney.* (*Aubrey Lawrence, of counsel*), for the State.

FULLER, P. J.   At the trial of plaintiff in error, charged with the crime of murder, the court upon its own motion instructed the jury in respect to the law of that offense and of manslaughter in the first degree, but refused to define manslaughter in the second degree or give the following instruction, timely requested by counsel for the accused: "Every killing of one human being by the act, procurement, or culpable negligence of another, which the statute of this state has not declared to be murder, nor manslaughter in the first degree, nor excusable or justifiable homicide, is manslaughter in the second degree.   Manslaughter in the first degree and manslaughter in the second degree are lesser degrees of the crime charged in the information, and, should you find the defendant not guilty of murder, but find from the evidence that he is guilty of such lesser degree of crime, as above described, you should determine which lesser degree of crime he has committed."

William Cakebread (the deceased) and plaintiff in error married sisters; but, the wife of the latter having died several years previous to the date laid in the information, he had since continuously resided in the family of the former, during which time they worked together as farmers and as carpenters in the construction of buildings.   At the time of the homicide they were joint tenants, residing together in a house upon the farm where the tragedy occurred.   The deceased was physically strong and athletic, of violent temper, and inclined to be exceedingly overbearing and abusive in his deportment toward the accused, who was much lighter in weight and apparently less disposed to engage in the quarrels that had previously occurred between them relative to matters pertaining to the operation of the farm.   It appears quite clearly from the evidence that Cakebread was a man subject to uncontrollable fits of anger, and had quite frequently made dangerous assaults upon others, including different members of his family, with which fact the accused was familiar.   During the forenoon of the 27th day of June, 1904, the accused had been plowing corn, and after dinner was in the act

of hitching his team to a mower, for the purpose of cutting grass, when Cakebread ordered him to continue plowing corn and resorted to the most opprobrious language, and threatened to kick him off the place, even if it became necessary to kill him in order to do so. Thereupon Cakebread seized the accused by the shoulder, and was in the act of striking him with his fist, when the former drew a revolver, which he had previously purchased for protection from the alleged threatened assaults of Cakebread, and began to step backward from the mower toward the house, repeatedly telling Cakebread to keep back if he did not want to get hurt. Cakebread, declaring that, "if that is your game, two can play at it as well as one, and I will kill you," started for the house, where there were two shotguns and a revolver, with suitable cartridges, of which fact accused was thoroughly conversant; but he was able to reach the porch first, and after repeatedly renewing his command to keep back, and while Cakebread was advancing in near proximity to the house, the fatal shot was fired. Without further reference to or characterization of the evidence, which is quite voluminous and in some respects conflicting, it may be safely suggested that, had the jury believed all of the testimony offered on the part of the defense, reasonable justification for the homicide might have been found, and in any event the accused was entitled to the requested instruction.

Sections 408 and 409 of the Revised Code of Criminal Procedure are as follows: "Whenever a crime is distinguished into degrees the jury, if they convict the defendant, must find the degree of the crime of which he is guilty. The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or information, or of an attempt to commit the offense." As manslaughter is distinguished into first and second degrees and included in the charge of murder, the jury had the legal right to convict the accused of either of such lesser offenses, the degree of which must be found, and it was therefore insufficient and erroneous to instruct as to manslaughter in the first degree without defining the second degree of that crime. As the mandate of the statute is that the jury must find the degree, and the court must instruct as to all matters of law es-

sential to an intelligent consideration of the facts as they may reasonably appear to the respective members of the jury, they might have been misled to the prejudice of the accused by the refusal to give the requested instruction. Under our statute it is indispensable to the proper trial of a homicide case that the degree of the crime be ascertained and designated by the jury. The record must show this essential element of the verdict, in order to enable the court to pronounce judgment within the penalty attached to a crime of that degree. From an Iowa case (State v. Clemens, 1 N. W. 546) we quote as follows: "The court instructed the jury 'that under the indictment the defendant may be found guilty of murder in the first degree, or murder in the second degree, or not guilty, as the evidence in your judgment demands at your hands.' The jury were fully instructed as to the necessary elements of the crimes of murder in the first degree and murder in the second degree, but no instruction was given as to what constituted the crime of manslaughter. This, we think, was erroneous. The crime of manslaughter is necessarily included in that of murder, and in all cases where a party is put upon his trial for murder in the first degree all the degrees of criminal homicide should be explained and submitted to the jury." In State v. Brown, 4 South. 897, the court say: "In such cases the jury are the sole judges of the state of facts disclosed on the trial, which may justify them to return a verdict of manslaughter, and the court is powerless to avoid their verdict, because in its opinion the evidence called for the finding of a higher offense. The verdict under the law would be responsive to the indictment, and it should stand, although it might be illogical, unjust, or unjustifiable under the evidence. Examples are not wanting of cases in which the jury have condemned some of the conspirators in a murder case for the highest offense charged, and the other conspirators for manslaughter only."

In criminal cases jurors are not required to publicly announce reasons for their verdict, and the following cases are consistent with the view herein expressed: State v. Clark 77 Pac. 287; Lane v. Commonwealth, 59 Pa. 371; State v. Buffington, 66 Kan. 706, 72 Pac. 213. Our conclusion, therefore, is that manslaughter in the second

degree embraces all forms of criminal homicide which are neither murder nor manslaughter in the first degree, and whenever a jury is instructed as to the crime of manslaughter a verdict therefor is permissible in either degree, and both degrees must be defined.

For the failure of the court to give the requested instruction or define manslaughter in the second degree, the judgment of conviction is reversed, and the case remanded for a new trial.

HANEY, J., dissenting.