STATE, Respondent v. LEWIS, Appellant

(244 N.W.2d 307)

(File No. 11495. Opinion filed July 28, 1976)

**Peter H. Lieberman,** Asst. Atty. Gen., for plaintiff and respondent; **William J. Janklow,** Atty. Gen., Pierre, on the brief.

**Laurence J. Zastrow,** Pennington Co. Public Defender, Rapid City, for defendant and appellant.

COLER, Justice.

Appellant was charged with the crime of murder in the shooting death of Doyle Glenn Henry in Pennington County, South Dakota. The jury returned a verdict of guilty of second degree manslaughter from which this appeal was taken. We affirm.

Appellant waived eleven of her original thirty assignments of error and the remaining nineteen assignments of error are covered under fifteen points in her brief. For the purposes of our review, these points are consolidated into three main issues, to wit: (1) whether the trial court erred in giving certain instructions and in failing to accept certain of appellant's proposed instructions; (2) whether there was sufficient evidence to warrant conviction for the offense of second degree manslaughter; and (3) whether certain confessions or admissions were properly admitted.

In a voluminous transcript, several eyewitnesses related the circumstances which led to the death of Doyle Henry, a well built construction worker, who, at thirty-four years of age stood six feet two inches or more and weighed 225 pounds or more. Mr. Henry's dislike for a certain Rapid City lawyer, Franklin J. Wallahan, was well known. Mr. Henry blamed the lawyer for a significant financial setback he had suffered as a result of a lawsuit in which Mr. Wallahan represented an interest adverse to him. Subsequently, Mr. Wallahan was involved as an attorney in two other matters in which Mr. Henry had some involvement.

Over the course of approximately two and one-half years, it is apparent that there was generated in the mind of Mr. Henry an intense hatred for the five-foot-eight-inch, 165 pound Mr. Wallahan. On more than one occasion, Mr. Henry had attempted to physically abuse Mr. Wallahan and on one such occasion, a friend of Mr. Wallahan's had thrashed him when he attempted to provoke a fight with Wallahan.

Both Mr. Henry and Mr. Wallahan were regular customers of the Anchor Lounge & Restaurant in Rapid City, South Dakota, and each of them were in and out of that establishment on the night of July 25, 1973. Mr. Henry, by word and gesture, had attempted to provoke a fight on more than one occasion that evening but nothing physical occurred until Mr. Henry blocked the door to Mr. Wallahan's attempted exit from the lounge at approximately 11:00 p.m. Mr. Henry demanded and got an apology from him; they shook hands and Mr. Wallahan was allowed to leave. Mr. Henry also left but both returned later. Mr. Henry, who came back after Mr. Wallahan had seated himself, propelled Mr. Wallahan off the barstool and onto the floor. In rapid sequence, the owner of the lounge, with a can of mace in his hand, positioned himself over the prone customer and faced the aggressor, Mr. Henry, to break up what was obviously an unfair fight and one that he had warned Mr. Henry not to start on his premises. A male patron of the bar stepped forward to help restrain Mr. Henry at about the same time the lounge owner attempted to spray mace at Mr. Henry. There is some question as to whether the mace was effective but it did momentarily stop the aggressive acts of Mr. Henry and caused the interceding patron to withdraw and cover his eyes. It was during this moment that appellant, who was a bartender at the lounge, grabbed the lounge owner's .38 caliber Smith & Wesson revolver, which was kept behind the cash register, and at close range fired one shot into the head of Mr. Henry which brought about his death almost instantaneously.

To establish premeditated design to effect death for the purpose of a murder conviction, SDCL 22-16-4, the state introduced evidence that for a period of time between March 12, 1973, and May 22, 1973, appellant had been dating Doyle Henry and that

she shot him out of jealousy since Mr. Henry, at the time of the shooting, was dating one of appellant's co-workers at the lounge. This theory of the state was consistent with a statement attributed to appellant and overheard by two witnesses who, shortly after the shooting testified that, when asked why she had shot Mr. Henry, appellant stated either that "He had it coming" or that "She owed it to him." Appellant, on the other hand, testifying at the trial, denied any jealousy. She acknowledged having dated the decedent but testified that she terminated the relationship out of fear of him. She related how Mr. Henry's obsessive dislike for Mr. Wallahan and threats, which Mr. Henry had related to her concerning Mr. Wallahan, brought about her terminating their relationship. As she saw the situation just prior to the shooting, the circumstances were such that she was convinced Mr. Henry intended to take the life of Mr. Wallahan and that he was about to do so at the time she shot him and that her acts were necessary to protect the life of Mr. Wallahan.

■ In this context, we have reviewed the instructions adopted by the court. The instructions properly set forth the lesser includable offenses of manslaughter in the first degree and manslaughter in the second degree.[1] We find that the instructions given by the trial court comply with the requirements of SDCL 23-45-23 which reads as follows:

"23-45-23. The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indict-

---

1. Instruction No. 19, which ties together the various instructions on the includable offenses, is set forth as follows:
"INSTRUCTION NO. 19
"The defendant in this case has been charged with a specific offense, namely, that of murder, as charged in the information.
"Under the laws of the state, the jury may find a defendant who is charged with a specific offense guilty of an offense which is necessarily included in the offense charged in the information. Consequently, in this case, if you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense of murder, as charged in the information, but are satisfied beyond a reasonable doubt that the defendant is guilty of the offense of manslaughter in the first degree, then you may return a verdict of guilty of manslaughter in the first degree.
"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of murder, as charged in the information, or of the offense of manslaughter in the first degree, but are satisfied beyond a reasonable

ment or information, or of an attempt to commit the offense charged."

Instructions on the lesser includable offenses are clearly required under the circumstances of this case. See State v. Hubbard, 1905, 20 S.D. 148, 104 N.W. 1120; State v. Stumbaugh, 1911, 28 S.D. 50, 132 N.W. 666; State v. Violett, 1961, 79 S.D. 292, 111 N.W.2d 598 and State v. Zobel, 1965, 81 S.D. 260, 134 N.W.2d 101. Appellant's contention that there was no evidence to support the giving of these instructions is without merit.

From the evidence before the jury they could have found appellant guilty of murder based upon premeditation, SDCL 22-16-4; manslaughter in the first degree because of the involvement of a dangerous weapon, SDCL 22-16-15; or manslaughter in the second degree, SDCL 22-16-20. We find appellant's contention to the contrary to be unsubstantiated by the record.

■ Appellant proposed several instructions relating to the defense of excusable or justifiable homicide within the meaning of SDCL 22-16-16 and 22-16-20. In lieu of appellant's proposed instructions the court gave Instruction No. 12, patterned in large measure from Pattern Jury Instruction (Criminal) § 3-7-350b, which reads as follows:

"INSTRUCTION NO. 12
"If the defendant at the time of the killing of the deceased had reasonable cause to believe from the

---

doubt that the defendant is guilty of the offense of manslaughter in the second degree, then you may return a verdict of guilty of manslaughter in the second degree.
"If you are satisfied beyond a reasonable doubt that the defendant is guilty of murder as charged in the information or manslaughter in the first degree, but you have a reasonable doubt as to which of the offenses she is guilty of, you should return a verdict of guilty of the lesser offense, being that of manslaughter in the first degree; if you are satisfied beyond a reasonable doubt that the defendant is guilty either of murder as charged in the information, manslaughter in the first degree, or manslaughter in the second degree, but you are not satisfied beyond a reasonable doubt of which offense she is guilty, you will find her guilty of the lesser offense, being manslaughter in the second degree.
"If you find the defendant neither guilty of murder nor of manslaughter in the first degree, nor of manslaughter in the second degree, you should then return a verdict of not guilty."

words, acts or conduct of the deceased that deceased had a design to take the life of a third person or to do such person great bodily injury, and that such design was about to be accomplished there the defendant had a right to act on the facts and circumstances as they appeared to her at the time and to kill deceased to prevent accomplishment of such design. In so defending such third person, the defendant was not required to nicely gauge or measure the force used, but she could use any means that appeared reasonably necessary under the circumstances. It is not necessary to this defense that the third person's danger should have been in fact real or actual, or that it should have been actually impending or about to occur, but if the defendant had reasonable cause to believe and did believe these facts, and killed the deceased to prevent such expected harm, then you must acquit the defendant.

"Upon this defense being raised as an issue by evidence tending to show the same, whether produced by the defendant or the State, the burden of proving that the defendant did not act in defense of a third person rests upon the State. So upon considering the evidence, if any, touching the circumstances of justification or excuse on the part of the defendant for the commission of the homicide, together with all of the other evidence in the case, you have a reasonable doubt as to whether the defendant committed the homicide in the lawful defense of another, when there was a reasonable ground on her part to apprehend a design on the part of the deceased to do such person some great bodily injury, and that there was imminent danger of such design being accomplished, you should find the defendant not guilty."

This court has recently had occasion to rule on the issue of a proper instruction involving the defense of third persons. See State v. Grimes, 1976, 90 S.D. 43, 237 N.W.2d 900. While in State v. Grimes, supra, the issue concerned the wife's right to intercede in her husband's behalf and the instruction there given related to

the provisions of SDCL 22-18-4, we held that the same rules apply whether a person acts in defense of a spouse or a stranger. In State v. Grimes, supra, this court also noted a corollary between the two distinct defenses, namely, the defense of a third person and self-defense. The trial court in the instant case properly applied the above stated rule. The language of SDCL 22-16-35 which reads as follows:

> "22-16-35. Homicide is justifiable when committed by any person in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished"

clearly does not, by its express terms, extend to appellant the right to defend a stranger. Further, the language of the instruction numbered 19[2] which was approved by this court in State v. Grimes, supra, does not indicate that appellant was in any way prejudiced by the instruction given in the instant case; rather, she benefited from the instruction given.

Appellant twice filed motions to suppress her statements taken by police officers during her interrogation. A hearing was held upon the first motion before the municipal judge of Rapid City in connection with appellant's preliminary hearing, but no determination was made on that motion at that level. Thereafter, the circuit court, upon a renewal of the motion and upon further

---

2.  The portion of that instruction set forth in State v. Grimes at 237 N.W.2d pp. 902, 903, states:

    " 'Where an assault is made with only the hands and fists but with such force and in such manner as is likely to produce great bodily injury, the spouse of the person attacked may lawfully resist the attack with whatever force is reasonably and apparently necessary.

    " 'Where an assault with the fists or hands, or by means not likely to produce great bodily injury, is being made on a person, but without intent to kill or do great bodily harm, and if the assault is not likely to produce great bodily injury, and if the spouse of the person being attacked is not deceived as to the character of such an assault, she is not justified in using a deadly weapon in self-defense.' "

    Applying the self-defense rule to defense of third persons, clearly, if the foregoing limitation on use of a weapon were applied, the act of taking a life by the appellant was not justified.

and extensive hearings, denied the motion having determined that the police officers had duly given the Miranda rights to appellant and that those rights "were fully and completely outlined and explained to the defendant, and the Court finds that the defendant voluntarily and understandably and knowingly waived her rights under the Miranda rule. With respect to the statement itself, the evidence presented to the Court would indicate and the Court finds under the Thundershield case, where the standard there is beyond a reasonable doubt, that the statements were voluntary beyond a reasonable doubt."

While this "determination" as set forth in the record is not accompanied by separate findings of fact and conclusions of law, the trial court obviously applied the standard of proof established by this court in State v. Thundershield, 1968, 83 S.D. 414, 160 N.W.2d 408. Although the "determination" of the trial court was not in the form required by RCP Rule 52(a) so as to be subject to the clearly erroneous rule, this court has, even prior to the adoption of that rule, held that a finding, such as that on the record here, "not being clearly against the weight of testimony, such finding is binding upon us." State v. Allison, 1910, 24 S.D. 622, 124 N.W. 747. The trial court's finding is not clearly against the weight of testimony.

We have reviewed appellant's other assignments of error and find them to be without merit.

Affirmed.

DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.