**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Paul R. GREGG, II, Defendant and Appellant.**

No. 15222.

Supreme Court of South Dakota.

Argued Oct. 23, 1986.

Decided April 22, 1987.

Thomas Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Jana Miner, Nelson & Harding, Rapid City, for defendant and appellant.

SABERS, Justice (On reassignment).

Paul R. Gregg (Gregg) was convicted of first degree manslaughter in the stabbing death of Lyle Rostad (Rostad). We affirm.

### Facts

On the evening of May 20, 1985, several people were playing softball in a Rapid City park. They saw Rostad approaching the ball field bent over, bleeding, and clutching his midsection. They also saw a man following Rostad at a short distance carrying a knife in his hand. Rostad was agitated about the man following him with the knife and made statements to the effect that the man had stabbed him. The softball players took bats and proceeded toward the man with the knife. The man disappeared into the park. Rostad was afraid to lie down for first aid for fear that "if I lay down ... [he] will get me again." Rostad was taken to the hospital by ambulance where he died of his injuries less than an hour after arrival.

Gregg was subsequently arrested and identified as the man with the knife. Gregg took the stand in his defense and claimed he did not commit the stabbing. Gregg claims that he and Rostad drank heavily all day long in the Rapid City park and were chased through the park by threatening individuals until, during the chase, exhausted and intoxicated, Gregg fell asleep. When he awoke he discovered that Rostad had been stabbed and that his (Gregg's) knife was out of its sheath, covered with blood, and lying on the ground next to Rostad. Gregg claims he was following Rostad with the knife to assist him against the chasers. It is undisputed that the folding knife he was carrying inflicted the fatal wound, and Gregg does not challenge the sufficiency of the evidence upon which his conviction was based.

### Defendant's Claims

Gregg claims that the trial court erred in refusing to give a second degree manslaughter instruction and in denying his motion to suppress statements he made during custodial interrogation.

### 1. DENIAL OF SECOND DEGREE MANSLAUGHTER INSTRUCTION

The jury was instructed only as to first degree manslaughter. Gregg's counsel requested an instruction on second degree manslaughter. The trial judge refused the instruction on the ground that there was insufficient evidence for the jury to conclude that if Gregg stabbed the victim it could have been second degree manslaughter.

After a long series of cases culminating in the 1985 case of *State v. Waff,*

373 N.W.2d 18 (S.D.1985), the law on this point is finally settled. "If the evidence does not admit or support an instruction on a lesser degree of homicide, the trial court need not give it." *State v. Woods*, 374 N.W.2d 92, 95 (S.D.1985); *Waff*, 373 N.W.2d at 23. In order to make this determination, the trial court is required to analyze the situation through both a legal and factual test. The essence of the factual test is that there must be sufficient evidence, when read in the light most favorable to the defendant, which would justify the jury in concluding that the greater offense was not committed and that a lesser offense was in fact, committed. *State v. Oien*, 302 N.W.2d 807, 809 (S.D.1981).

Gregg was charged with first degree manslaughter under SDCL 22–16–15, which provides:

> Homicide is manslaughter in the first degree when perpetrated:
>
> . . . .
>
> (3) Without a design to effect death, but by means of a dangerous weapon;
>
> . . . .

SDCL 22–16–20 defines second degree manslaughter as:

> Any reckless killing of one human being by . . . another which, . . . is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, . . . .

The trial court asked defense counsel if there was anything she wanted to say in relation to her proposed instruction for lesser included second degree manslaughter.

*Counsel:* Your Honor, I believe the jury should be given the option of finding the lesser included due to the language of 'recklessness.' Also, the knowledge, or if the act happened, that it was not an act that would probably have led to the death of Mr. Rostad. It could also be interpreted as possibly leading to his death.

*The Court:* What evidence on behalf of defendant have you presented that could

possibly be a second degree manslaughter?

*Counsel:* I don't believe we've presented any Your Honor.

*The Court:* Or which evidence [has] the State . . . presented that could be construed or be his defenses that he was asleep and didn't do it?

*Counsel:* I understand, Your Honor. I am suggesting that it should be a lesser included because the jury could view the State's evidence as an act without intention, without any plan or purpose.

*The Court:* Has to be without a deadly weapon because he's charged with a homicide without intent to kill, with a deadly weapon, so he's not charged with the intent, just a deadly weapon.

Gregg argues to this court[1] that SDCL 23A–26–7 requires the trial court to instruct the jury on a lesser degree of a crime whenever a crime is divided into degrees. This argument is advanced whether or not the proposed instruction is supported by the evidence. SDCL 23A–26–7 provides:

> *Verdict as to degree of crime—Lowest degree found on reasonable doubt.* Whenever a crime is distinguished by degrees, a jury, if it convicts an accused, shall find the degree of the crime of which he is guilty and include that finding in its verdict. When there is a reasonable ground of doubt as to which of two or more degrees an accused is guilty, he can be convicted of only the lowest degree.

This statute does not mandate instruction as to lesser degrees in all homicide cases according to *Woods* and *Waff, supra.* However, Gregg argues that *Woods* and *Waff* are distinguishable because those cases involved a murder charge and requested instructions on first and second degree manslaughter, which are not lesser degrees of the crime of murder.

■ On first reading, the statute appears to support these arguments. On closer examination it is clear that the first sentence of the statute simply requires the jury to find the degree of the crime of which the defendant is guilty and include

---

**1.** At trial, counsel did not cite SDCL 23A–26–7    nor argue this specific point to the trial court.

that finding in its verdict. It does not require a jury instruction on same. The second sentence of the statute mandates that the accused can be convicted of only the lowest degree when there is a reasonable ground of doubt as to which of two or more degrees he is guilty. It is clear under the evidence in this case, that if Gregg did do it, he did it with a deadly weapon. Therefore, he failed to establish evidence of a reasonable ground of doubt as to a lesser crime and the instruction on a lesser degree was not required.

As stated in *Woods*,

If evidence has been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be reversible error.... There must be sufficient evidence,[2] however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed.

374 N.W.2d at 95.

Gregg suggests another possible version of the stabbing which supposedly would have allowed a finding of second degree manslaughter. Gregg also states that "other scenarios" would support such a finding. The evidence in the record suggests none, and none of these theories are persuasive. Since it is undisputed that the wound was inflicted by a dangerous weapon, the only finding the evidence supports is first degree manslaughter as defined in SDCL 22–16–15(3). The trial court properly denied Gregg's request for a second degree manslaughter instruction.

## 2. DENIAL OF SUPPRESSION MOTION

Gregg argues that the trial court erred in denying his motion to suppress certain statements obtained from him during custodial interrogation after arrest. Gregg is vague in identifying what these allegedly damaging statements were. Throughout

his questioning, Gregg steadfastly maintained he did not stab Rostad.

Gregg was given his *Miranda* rights. The State claims he validly waived his right to remain silent, whereas Gregg cites various circumstances under which the questioning took place as grounds for rendering his waiver ineffective. According to the interrogation transcript, Gregg was questioned from 9:56 p.m. to 11:44 p.m. on the night of the slaying. One of the officers conducting the interrogation testified that Gregg's questioning was the longest interrogation he had participated in during his fourteen year career as a police officer. A test taken shortly before the interrogation indicated Gregg's blood alcohol content was .24. Finally, the officer lied to Gregg by repeatedly stating that Rostad had identified Gregg as his assailant.

■ To determine whether the waiver of an accused's constitutional right against self-incrimination was made voluntarily, we must scrutinize the totality of the circumstances surrounding the interrogation. *State v. Janis*, 356 N.W.2d 916, 918 (S.D. 1984); *State v. Caffrey*, 332 N.W.2d 269 (S.D.1983); *State v. Cowell*, 288 N.W.2d 322 (S.D.1980); *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212 (1979). The State has the burden of proving beyond a reasonable doubt that a confession or incriminating statement was voluntarily made by the accused before the same may be introduced into evidence. *Janis*, 356 N.W.2d at 918. If the trial court finds the confession or incriminating statement was voluntary beyond a reasonable doubt, such a finding is binding upon this court unless it is clearly erroneous. *Id.* at 919; *Caffrey*, 332 N.W.2d at 271; *Cowell*, 288 N.W.2d at 324. In reviewing the trial court's finding on voluntariness, we consider the evidence in the light most favorable to the finding. *Janis, supra; State v. Kiehn*, 86 S.D. 549, 199 N.W.2d 594 (1972).

■ This court has held:

---

**2.** This question also appears to have been answered by Justice Henderson in *Waff, supra:* "As to both of these separate crimes [murder and manslaughter], divided into degrees, the

trial court can and should only instruct the jury on matters supported by the evidence." 373 N.W.2d at 28, (Henderson, J., concurring).

Custodial statements made by an intoxicated defendant are not per se involuntary, but rather this is one of the circumstances to be considered by the trial judge in his determination of voluntariness. *State v. Neville,* 312 N.W.2d 723, 727 (S.D. 1980) *rev'd on other grounds* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The same is true regarding police misrepresentation. *Flittie v. Solem,* 751 F.2d 967, 974–975 (8th Cir.1985).

■ The trial court was not clearly erroneous in finding that Gregg's Fifth Amendment waiver was valid beyond a reasonable doubt. The court specifically found that Gregg had twice been informed of his *Miranda* rights and that he knowingly, voluntarily, and intelligently waived his right to remain silent and his right to have counsel present both before and during the interrogation conducted by the police officers. We further note that Gregg has considerable experience with the criminal justice system both as a defendant and as a former police officer. Moreover, despite Gregg's high blood alcohol content, the transcript of the interrogation shows he was able to make intelligent responses to the investigator's questions. "The standard is whether, by reason of intoxication or other factor, defendant's 'will was overborne' or whether his statements were the 'product of a rational and intelligent act of free will.'" *United States v. Brown,* 535 F.2d 424, 427 (8th Cir.1976) *citing Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770, 782 (1963). Gregg's statements are more a product of the latter situation than the former.

Finally, we do not feel that the officer's trickery tips the scales toward the finding of invalid waiver. As the trial judge noted in denying Gregg's motion to suppress statements, Gregg steadfastly indicated that if Rostad identified Gregg as inflicting the wound, he was mistaken. Gregg was therefore not duped into rendering damaging statements.

■ Gregg contends that although he did not confess to the stabbing of the victim, numerous inculpatory admissions and inconsistent statements were extracted from him during the interview. As indicated above, Gregg does not specifically mention what these statements were or how they damaged him. Before any claimed admissions can be ruled involuntary, the accused must have said something inculpatory. *See: People v. Haydel,* 12 Cal.3d 190, 115 Cal.Rptr. 394, 524 P.2d 866 (1974); 29 Am.Jur.2d §§ 555, 556 (1967). We fail to find any statement which could reasonably be regarded as inculpatory. A steadfast insistence of innocence is not an admission of anything.

We affirm the trial court in all respects.

WUEST, C.J., and HENDERSON, J., concur.

MORGAN, J., concurs in part and concurs in result in part.

FOSHEIM, Retired Justice, dissents.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

MORGAN, Justice (concurring in part, concurring in result in part).

I concur in the majority disposition of the suppression issue but I write specially to concur in the result on the instruction issue. I cannot agree with the rather cavalier treatment afforded SDCL 23A–26–7 when the majority suggests that the statute does not mandate instruction as to lesser degree of the offense charged. How a jury is expected to "find the degree of the crime" and "have reasonable doubt as to which of two or more degrees an accused is guilty," without instructions by the court defining the lesser degrees, is beyond my comprehension. It is the province of the jury to determine the facts and apply the law as instructed by the court. 47 Am. Jur.2d *Jury* § 14 (1969).

It is the province of the legislature to define criminal acts and to fix the punishment therefore. *State v. Soto,* 378 N.W.2d 625 (Minn.1985); *State v. Moore,* 286 N.W.2d 274 (N.D.1979), *cert. denied* 446 U.S. 943, 100 S.Ct. 2170, 64 L.Ed.2d 799.

The essential part of SDCL 23A–26–7 has been part of the criminal law of this state since territorial days. Perhaps part of the problem is that the definitions of crimes, even those that are still divided into degrees, have become more complex. Furthermore, the concept of a lesser included offense does not necessarily jibe with the concept of an offense of a lesser degree. The lesser included offense may or may not be defined as an offense of a lesser degree, and vice versa.

But, that is not to say that it is appropriate to give a lesser degree offense instruction in every case. Article VI, section 7 of the South Dakota Constitution gives to an accused in all criminal prosecutions the right "to demand the nature and cause of the accusation against him; to have a copy thereof." This requires that in the indictment or information the accused be advised of the offense charged with reasonable certainty so that he may prepare his defense. *State v. Blue Fox Bar*, 80 S.D. 565, 128 N.W.2d 561 (1964).

This court has previously held that it is error for the trial court to instruct on a lesser degree offense, the elements of which are not included in the offense upon which he stood. In *State v. Lohnes*, 324 N.W.2d 409 (S.D.1982), the defendant was charged with first-degree murder and the trial court, over defendant's objections, instructed on the offense of second-degree murder. In reversing the trial court, we relied on *State v. Reddington*, 7 S.D. 368, 64 N.W. 170 (1885), which stands for the proposition that a man cannot be convicted of an offense, the elements of which were not included in the charge upon which he stood trial.

In our judgment it was error to charge the jury that in order to convict, it was not necessary for the state to make out such a case as it had set out in the indictment.

One purpose of an indictment is to apprise the defendant of what he is charged with having done that constitutes a criminal offense so that he may be prepared to defend himself at the trial.

We termed this reasoning to be of constitutional dimension, pointing out the pertinent part of article VI, section 7 set out above. The elements of the lesser degree murder, as defined by SDCL 22–16–7, are different than the offense with which Lohnes was charged, that being first degree murder as defined by SDCL 22–16–4. Then Chief Justice Fosheim, clinging fiercely to what he considers the clear mandate of the statute, dissented from that proposition citing subsequent cases which he admitted did not cite *Reddington*. He neglected to mention that they also failed to mention the constitutional provision. He may have been correct when he termed *Reddington* a "legal mummy," but I submit that the constitutional requirement is still alive and breathing. Obviously, if a lesser included offense cannot contain any elements not found in the major offense under the test first proposed by Justice Zastrow in his special concurrence in *State v. Kafka*, 264 N.W.2d 702, 705 (S.D.1978), and adopted by this court in *State v. Oien*, 302 N.W.2d 807, 809 (S.D.1981), any instruction that meets that test will pass constitutional muster. With respect to the statutory mandate of SDCL 23A–26–7, it simply cannot be constitutionally applied with respect to offenses wherein the lesser degree offense contains elements not found in the greater degree offense on which the defendant is standing trial.

It is for that reason that I agree that the trial court did not have to instruct the jury on the second degree manslaughter offense, inasmuch as it contained an element not necessarily included in the first degree manslaughter charge, to-wit: a reckless killing. I would affirm the trial court on this issue.

FOSHEIM, Retired Justice (dissenting).

This dissent is grounded on the belief that the following language of SDCL 23A–26–7 mandates that an instruction be given on a lesser degree of a crime whenever the higher degree of that same crime is charged:

Whenever a crime is distinguished by degrees, a jury, if it convicts an accused,

shall find the degree of the crime of which he is guilty and include that finding in its verdict. When there is a reasonable ground of doubt as to which of two or more degrees an accused is guilty, he can be convicted of only the lowest degree.

The majority holds that notwithstanding this language a lesser degree instruction is only required when both prongs of the two-part test are satisfied. It leads the reader to believe this position is firmly grounded by precedent in the *Woods* and *Waff* decisions. That is far from correct. Gregg was charged with first-degree manslaughter and requested an instruction on the second degree of this crime. In both *Woods* and *Waff* the defendant was charged with murder and requested manslaughter instructions. The statute did not apply in those cases because manslaughter is a crime distinct from murder, while the statute expressly applies only to crimes "distinguished by degrees." Because murder and manslaughter are not crimes "distinguished by degrees," neither *Woods* nor *Waff* presented the issue now before this court. This court therefore was free to adopt the common law two-part test to apply in such situations. The *Woods* language cited by the majority which states "[i]f the evidence does not admit or support an instruction on a lesser degree of homicide, the trial court need not give it" is therefore pure dicta. In fact, the majority opinion in *Woods* nowhere even mentions the statute.

While this writer dissented in both *Waff* and *Woods*, they are nonetheless the decisions of this court. As noted in *Waff*, a consistent line of cases beginning as far back as 1905 in *State v. Hubbard*, 20 S.D. 148, 104 N.W. 1120, held that under SDCL 23A–26–7 and its predecessors, whenever a crime "distinguished by degrees" was charged it was reversible error to refuse to give an instruction on the lesser degree of that crime.* *See also State v. Vassar*, 279 N.W.2d 678 (S.D.1979); *State v. Lewis*, 90 S.D. 615, 244 N.W.2d 307 (1976); *State v. Zobel*, 81 S.D. 260, 134 N.W.2d 101, *cert.*

denied, 382 U.S. 833, 86 S.Ct. 74, 15 L.Ed.2d 76 (1965); *State v. Violett*, 79 S.D. 292, 111 N.W.2d 598 (1961); *State v. Painter*, 70 S.D. 277, 17 N.W.2d 12 (1944) (citing *State v. Stumbaugh*, 28 S.D. 50, 132 N.W. 666 (1911)). Because of this precedent, *Waff* distinguished itself from these cases in which an instruction was requested on different degrees of the same crime:

This statute by its own terms applies only to crimes that are divided into degrees. Read correctly, *State v. Hubbard* merely holds that if an instruction is given on first-degree manslaughter the jury must also be given an instruction on second-degree manslaughter pursuant to the predecessor to SDCL 23A–26–7.

373 N.W.2d at 23. *Waff* overruled *Hubbard* and its progeny only to the extent inconsistent with the view expressed in *Waff*. It did not overrule, and expressly distinguished, these earlier cases insofar as they held that a lesser degree instruction is mandatory when the higher degree of the same crime is charged. *Id.* I find it odd that the majority relies on precedent to support its opinion when that precedent by its own terms indicates it would reach the opposite conclusion.

The majority's substitution of the two-part test for what I consider to be the clear mandate of the statute is disturbing, because instead of requiring a requested instruction whenever the higher degree is charged, all crimes distinguished by degrees will now be treated the same as any other offense charged when an instruction on a lesser crime is requested. The judicial gloss added to this statute by the majority's opinion therefore renders the statute impotent. Furthermore, it cannot be argued that the statute assumes application of the two-part test. What is now SDCL 23A–26–7 was in effect before the turn of the century. *See* Penal Code 1877, § 9. This court did not begin applying the two-part test until Justice Zastrow's concurrence in *State v. Kafka*, 264 N.W.2d 702, 705 (S.D.1978), over 100 years later. *See Waff*, 373 N.W.2d at 22.

---

* My dissents in *Waff* and *Woods* were founded upon SDCL 22–16–1, which defines murder and manslaughter as degrees of homicide. This position was consistent with the line of cases beginning with *Hubbard* and ending with *Waff*.

This writing is not meant to imply that I believe the two-part test is otherwise inappropriate to determine when an instruction on a lesser crime is required. Instead, I believe it plainly makes great sense to deny an instruction on a lesser crime when the evidence could not support a finding of that crime. I have authored many opinions so holding. *State v. Blakey*, 332 N.W.2d 729 (S.D.1983); *State v. Heumiller*, 317 N.W.2d 126 (S.D.1982); *State v. Pickering*, 317 N.W.2d 926 (S.D.1982); *State v. Oien*, 302 N.W.2d 807 (S.D.1981). Nevertheless, if the legislature chooses to keep in effect a statute which requires an instruction in all cases on the lesser degree of a crime distinguished by degrees it has the right to do so. Unlike the majority, however, I will not reach the laudable result of having the two-part test apply when the legislature has mandated otherwise. Only the legislature can repeal SDCL 23A–26–7. As recently as *St. Paul Ramsey v. Pennington County*, 402 N.W.2d 340, 343 (S.D.1987), the author of this majority opinion stated this court would not construe a statute to reach a desired result "where such action would do violence to the plain meaning of the statute under consideration." Where is that sentiment now?

I concur in the majority's holding regarding issue two.