STATE, Respondent, v. PAINTER, Appellant

(17 N. W. 2d 12.)

(File No. 8705. Opinion filed December 21, 1944.)
Rehearing Denied February 16, 1945.

**Henry C. Mundt,** of Sioux Falls, for Appellant.

**George T. Mickelson,** Atty. Gen., and **Charles P. Warren,** Asst. Atty. Gen., for Respondent.

SICKEL, J.

The state's attorney of Minnehaha county filed an information in the circuit court charging Earl Painter, the defendant, with manslaughter in the first degree. Defendant pleaded not guilty. The jury found the defendant guilty of manslaughter in the second degree and the court imposed a sentence of four years' imprisonment in the state penitentiary. Motion for new trial was overruled and defendant has appealed.

The information filed by the state's attorney charges that on January 1st, 1943, the defendant, "* * * Did wilfully, wrongfully, unlawfully, and feloniously, without a. design to effect death, and in the heat of passion, but in a cruel and unusual manner, and while under the influence of intoxicating liquor, strike and beat about the face and

head, Orvin Elroy Anderson, a human being, resulting in an intra meningeal hemorrhage of the entire base of the brain, the said defendant then and there, and at said time, killing and causing the death of the said Orvin Elroy Anderson, a human being, * `* *`."

Appellant claims that manslaughter in the second degree is not an offense necessarily included in the offense of manslaughter in the first degree, as charged in the information, and that therefore the court erred in instructing the jury that they might return a verdict finding the defendant guilty of manslaughter in the second degree.

■ Homicide is the killing of one human being by another. It is either murder, manslaughter, excusable homicide or justifiable homicide. SDC 13.2001. Murder is defined by SDC 13.2007. Manslaughter is defined by SDC 13.2013. Manslaughter in the second degree is defined by SDC 13.2016 as follows: "Every killing of one human being by the act, procurement or culpable negligence of another which, under the provisions of` this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

■ By these and other provisions of SDC Ch. 13.20, every act by one human being which causes the death of another is unlawful, either as murder, manslaughter in the first degree, or manslaughter in the second degree, unless it is excusable or justifiable. By the terms of SDC 13.2016, manslaughter in the second degree includes all forms of criminal homicide which are neither murder nor manslaughter in the first degree. It was the duty of the jurors, in case of conviction, to find the degree of manslaughter of which defendant was guilty. SDC 34.3671. It was, therefore, the duty of the court to define second degree manslaughter and to instruct the jury that a¹ verdict for that degree of the offense was permissible, and a failure to do so would have been erroneous. State v. Hubbard, 20 S. D. 148, 104 N. W. 1120; State v. Stumbaugh, 28 S. D. 50, 132 N. W. 666.

■ Appellant says that the information does not allege, and the evidence does not show, culpable negligence. But

the statute defining manslaughter in the second degree states "every killing of one human being by the act, procurement, or culpable negligence of another * * * is manslaughter in the second degree." The language of the statute shows clearly that culpable negligence is only one of many unlawful acts which may constitute manslaughter in the second degree.

Appellant cites the case of State v. Bates, 65 S. D. 105, 271 N. W. 765, wherein the court defined culpable negligence and decided that when culpable negligence is proved the act may amount to manslaughter in the second degree, but there is nothing in the opinion which indicates that manslaughter in the second degree, as a public offense, depends exclusively on culpable negligence.

 Another assignment of error is to the effect that the evidence is insufficient to justify the verdict and judgment. Specifically, the claim is that the evidence does not show beyond a reasonable doubt that defendant struck the blow that killed Anderson.

Witnesses for the state testified that shortly after 12 o'clock on the morning of January 1st, 1943, Forsberg, Anderson and defendant were in the engineer's room situated in the basement of the Cataract Hotel. All three of these men were hotel engineers. Anderson and defendant argued and quarreled about which one of them should remain on duty. Anderson said he was going home and went to the locker to get his coat. When he turned around and came back the defendant hit him in the face and on the head with his fist. Anderson fell back against the locker. Then he proceeded to the door when defendant struck him again, also in the face and head, after which Anderson stooped over and ran out of the room and into the ice room. Defendant followed Anderson, and as he did so Forsberg told defendant to leave Anderson alone, but defendant did not stop. He was three or four feet behind Anderson when they went into the ice room. Within three or four minutes thereafter Forsberg went into the ice room and saw Anderson on the floor unconscious while the defendant was trying to revive him. The defendant said to Forsberg that Anderson had fainted. About that time Clayton came into the ice room, and Painter

and Forsberg carried Anderson back to the engineer's room. Anderson was already dead. After Anderson's death an autopsy was held and the doctor who made it described several abrasions on Anderson's face and head. One was under the chin on the right side, one above the eye near the temple, one high on the forehead, and one over the right eye. There was another over the bridge of the nose, the left eye was puffed and swollen and there was a bruise on the right leg below the knee on the outside, one on the left elbow and one between the knuckles on his right hand. There was no condition of heart, lungs, kidneys or abdomen that could have caused Anderson's death. The examination of Anderson's body at the time of the autopsy showed that there was an extensive hemorrhage outside the brain, inside the middle meningeal tissue surrounding the base of the brain, extending down to the cerebellum and up over the lateral side of the brain. The circle of Willis was broken, torn and lacerated on both sides. The hemorrhage caused sufficient pressure of the brain to cause death, and that pressure was the cause of the death of Anderson. The testimony showed that the hemorrhage was caused by a blow to the head; that unconsciousness and death might have been instantaneous or might have been delayed as much as half an hour, but not longer. The defendant testified that he took some soldiers with him to the engineer's room of the hotel fifteen or twenty minutes after midnight; that he and the the others went through the ice room and saw no one in that room at that time; that he showed the soldiers about the place; that they together drank some whiskey, and that was the last he remembered until he went into the ice room and found Anderson lying on the floor. Defendant testified that he never saw Anderson that evening until then, and that he never saw Forsberg that evening until he saw him standing in the doorway looking into the ice room at the time the defendant found Anderson on the floor. Much of the state's evidence is disputed by the defense. There are some inconsistencies and contradictions on both sides.

The jury are the exclusive judges of the credibility of the witnesses and the weight of the evidence. They must decide all questions of fact. The jury believed from the

evidence in this case that the defendant struck Anderson in the head and face with his fist and that these blows caused the death of Anderson. Their verdict was based on competent evidence which is sufficient to justify their conclusion and cannot be disturbed by this court on appeal. State v. Stumbaugh, supra; State v. Clark, 46 S. D. 490, 194 N. W. 655; State v. Wolfe, 64 S. D. 178, 266 N. W. 116, 104 A. L. R. 464.

■ The appellant also claims that by the provisions of SDC 34.3616 he was entitled to twenty peremptory challenges and was allowed but ten, and assigns this as error.

The charge upon which the defendant was tried in this case was manslaughter in the first degree and defendant was entitled to twenty peremptory challenges. Denial of this right is ground for a new trial by the provisions of SDC 34.4002. However, there is nothing in the record to show that this question was presented to the court at the trial. It was raised for the first time by affidavit on motion for a new trial. This method of presentation to the circuit court was not proper or sufficient under the provisions of SDC 34.4005 and, therefore, the question cannot be considered by this court on appeal. State v. Rash, 27 S. D. 185, 130 N. W. 91, Ann. Cas. 1913D, 656; 24 C. J. S., Criminal Law, p. 289, § 1673.

■ The appellant also requested an instruction on circumstantial evidence which was refused. In support of his claim that the instruction should have been given, he states that the evidence as to the cause of hemorrhage is circumstantial; that is, that it might have been caused by the blows which the state claims were struck by defendant or by wounds inflicted by someone else at an earlier time.

Doctor Pankow testified that after the death of Anderson he observed the wounds and bruises on Anderson's head and body; that some of the head injuries were older than others by a matter of hours. The presence of any bruises on Anderson's face before the assault by defendant is disputed by witnesses for the state. There is also evidence of an altercation between Anderson and a soldier in the hotel during the evening, but nowhere does the record show that the

soldier or anyone else struck Anderson that night. The evidence which defendant claims supports this issue is circumstantial, but is not evidence upon which the state relied for conviction. The state's evidence consists almost entirely of direct evidence and, therefore, the requested instruction on circumstantial evidence was properly refused. State v. Brandell, 26 S. D. 642, 129 N. W. 242; State v. Cline, 27 S. D. 573, 132 N. W. 160.

Other assignments of error relate to excusable and justifiable homicide, and to alleged misconduct of the state's attorney. We have examined the record relative to all of these assignments and find that, if error was committed, it was not prejudicial.

Judgment affirmed.

All the Judges concur.