STATE, Respondent v. GROOMS, Appellant

(186 N.W.2d 889)

(File No. 10825. Opinion filed May 11, 1971)

Gordon Mydland, Atty. Gen., Leonard E. Andera, Asst. Atty. Gen., Pierre for plaintiff and respondent.

Ronald Clabaugh of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

BIEGELMEIER, Judge.

Defendant entered a plea of not guilty to an information charging him with manslaughter in the first degree. A jury found him guilty of manslaughter in the second degree. The evidence of the state was defendant and Artie Janis engaged in a fight or scuffle in a bar in which Janis was the apparent victor. Defendant and his nephew left the bar together. As they went out the owner of the bar told the nephew to go home and forget it to which he answered they were going to settle it "here and now." Shortly thereafter defendant reentered the bar with a pistol in his hand; he fired two shots at Janis who was sitting in a booth with three other persons. Janis died on the way to the hospital. Defendant was knocked down and while on the floor the gun was kicked out of his hand and he was kicked and beaten rather severely by friends of deceased. Defendant was taken to a hospital. When defendant was on the floor his nephew came back in the bar with a shotgun in his hands; some persons tried to take this gun away from him and the shotgun fired breaking some glasses. Defendant testified he rode to the bar in his nephew's car which had three rifles in the back seat and the pistol on the front seat; that Janis said something to him and he stood up and that was the last he remembered until he was in the hospital. On cross-examination he admitted he had formerly testified he jumped up and took a swing at Janis.

Defendant raises two claims of error—the giving of part of Instruction 7 as to criminal responsibility and that SDCL 22-16-20, defining the crime of manslaughter in the second degree, is so vague and indefinite as to render it unconstitutional.

## I.

■ Instruction 7, further explained in other instructions, was concerned with the subject of persons not capable of committing crimes, i. e., without being conscious thereof. See SDCL 22-3-1(6). Defendant's objection was to a paragraph of this instruction which advised the jury the law presumed a defendant was conscious of his acts and the effect of the presumption when other evidence is produced on the subject.

We do not set out the instruction for the reason there was no evidence defendant was not conscious of his acts when he was committing them and so the instruction, rather than being erroneous as to him, was to his benefit. It gave the jury an option[1] to return a verdict of not guilty if it had a reasonable doubt that he was conscious of committing the crime for which he was charged (or any included offense) when there was no evidence to support it. In State v. Johnson, 81 S.D. 600, 608, 139 N.W.2d 232, 237, speaking generally on this subject, the court wrote:

> "Courts are not required to instruct as to matters that find no support in the evidence."

The court in the Johnson opinion also had this specific criminal responsibility question before it and what was there written is not only relevant but decisive here:

> "Defendant requested an instruction to the effect that when one who commits an act is not conscious thereof, such act is not criminal even though if committed by a person who was conscious, it would be a crime. This was properly refused. The requested instruction set forth the limited situations

1. By last paragraph of Instruction 9.

in which the claimed rule applies and this record does not show the existence of any of these."

With reference to there being no evidence to support the instruction, we believe it appropriate to detail the record on that point. Defendant's brief does not claim, nor refer to any such evidence; it only states:

"the trial judge was apparently satisfied that some evidence of the lack of criminal responsibility had been produced, since the Court undertook to instruct the jury on the defense of the lack of criminal responsibility."

The state's brief points out that there is nothing in the record to show defendant had no consciousness of committing the act. However, because the claim was argued, we have read and searched through the entire transcript and find no such evidence. Defendant merely testified that when deceased spoke to him, "I stood up * * * that is the last I remember." He was represented at trial by two able and experienced counsel appointed by the court. As part of the defense, the doctor who treated defendant at the hospital was called as a witness. Evidently to explain to the jury defendant's amnesia or loss of memory, the doctor was asked if there was a medical explanation for defendant's "inability to remember anything" or "recall the facts that occurred at * * * or preceding * * * the time that he received such injuries". In discussing an objection made to this testimony one of his counsel stated: "Your Honor, the point of the question is the inability of the defendant to remember. It doesn't reach the point of unconsciousness". Unconsciousness, amnesia and insanity are not the same. See references thereto in State v. Johnson, supra; State v. Brech, 84 S.D. 177, 169 N.W.2d 242, and see Weihofen, "Mental Disorder as a Criminal Defense", especially pp. 35, 46 and 121.

It may be the trial court gave the instructions mentioned out of an abundance of caution. In any event, it was not error of which defendant can complain.

## II.

 Statutes covering homicide are now codified in SDCL 22-16-1 through SDCL 22-16-39. Those applicable here are:[2]

"Homicide is the killing of one human being by another. It is either:

(1) Murder;

(2) Manslaughter;

(3) Excusable homicide; or,

Justifiable homicide." SDCL 22-16-1.

"Homicide is manslaughter in the first degree when perpetrated without a design to effect death and in a heat of passion * * * by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide." SDCL 22-16-16.

The court, among others, gave instructions embodying the above statutes and then gave Instruction 12, which included pertinent parts of SDCL 22-16-20, as follows:

"Second degree manslaughter is defined for the purposes of this case by our criminal statutes as follows: 'Every killing of one human being by the act, procurement, or culpable negligence of another which is not manslaughter in the first degree is manslaughter in the second degree.'

"As used in this statute, the words 'culpable negligence' mean that the defendant intentionally did something which he should not have done, or intentionally failed to do something which he should have done, under such circumstances that it can be

---

2. Defendant was first charged with murder and found guilty of manslaughter in the first degree. The trial court granted defendant's motion for a mistrial on grounds not appearing in the record. At the second trial the charge was manslaughter in the first degree.

said he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce."

Defendant excepted to this instruction:

"The defendant excepts to Court's Instruction number 12 purporting to define the crime of second degree manslaughter for the reason that the statute defining or attempting to define second degree manslaughter is unconstitutional and in violation of both the U.S. Constitution and the State Constitution in that it is vague and indefinite as to what act or acts would constitute the commission of the crime of second degree manslaughter and the wording of the statute is a catch-all provision and specifically that portion which says every killing of one human being by acts, procurement, or culpable negligence not necessarily manslaughter in the first degree is manslaughter in the second degree. The statute contains no criteria and statement of element and definition of prescribed conduct and therefore is unconstitutionally vague."

By Instruction 13 the court advised the jury:

"The essential elements of the offense of manslaughter in the second degree constituting a lesser degree of the crime of manslaughter, each of which the State must prove beyond a reasonable doubt, are:

1. That the defendant at the time and place alleged in the Information inflicted an injury or injuries upon the deceased from which the deceased died.

2. That the proximate cause of the death of the deceased was an unlawful act committed by the defendant, or by the culpable negligence of the defendant.

3. That the killing was by such means and under such circumstances as not to constitute manslaughter in the first degree as defined in these instructions.

4. That the killing was without justification or without excusable cause (which the court defined)."

Defendant contends because the legislature in SDCL 22-16-20 defined second degree manslaughter in the manner stated it was intended to be a catchall, that it is impossible to determine therefrom what acts constitute that offense and in order to determine that, it is first necessary to determine what acts or conduct are encompassed within the statutes relating to murder, manslaughter in the first degree, excusable and justifiable homicide.

This arrangement does not make it difficult to understand the conduct proscribed or to fit the acts of defendant within that made criminal by the statute. Section 619.18, Minnesota Statutes, 1941, was written in much the same language as our second degree manslaughter statute as it provided:

"Such homicide is manslaughter in the second degree when committed without a design to effect death * * *

(3) By an act, procurement, or culpable negligence of any person, which * * * does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree."

The court sustained the charge of manslaughter thereunder by reason of failure to guard entrance to a home while it was being fumigated with a deadly gas whereby an eight-year-old youth entered the home and died from the effects of the gas. State v. Cantrell, 220 Minn. 13, 18 N.W.2d 681. It has been the practice of many states to define degrees of murder and then provide that killing of a human being other than those sections to be manslaughter. A large number of these statutes are collected in 1 Warren on Homicide, 1938 with 1962 Pocket Parts, pages 5 through 161. Those of New York, which by § 1052(3) of its Penal Law and § 9491, now § 12-27-19, North Dakota Century Code, use similar, if not the exact, language to define second degree manslaughter, and are examples of the pervading method of defining that offense. The words used are plain and have acquired mean-

ings that satisfy due process requirements. See State v. Bolsinger, 221 Minn. 154, 21 N.W.2d 480.

Our present statutes defining homicide, murder and manslaughter in the first and second degrees set out above, as well as those relating to excusable and justifiable homicide, are the same as they originally appeared in the 1877 Revised Codes of Dakota Territory. They have been subject to court opinions[3] for over 90 years and not challenged for vagueness. Rather than a complicated matter as defendant urges, the court in State v. Hubbard, supra, put it in rather simple language when it wrote:

> "Our conclusion, therefore, is that manslaughter in the second degree embraces all forms of criminal homicide which are neither murder nor manslaughter in the first degree, and whenever a jury is instructed as to the crime of manslaughter a verdict therefor is permissible in either degree, and both degrees must be defined."

In State v. Painter, 70 S.D. 277, 17 N.W.2d 12, the court wrote:

> "The language of the statute shows clearly that culpable negligence is only one of many unlawful acts which may constitute manslaughter in the second degree. * * * there is nothing in the (State v. Bates, 65 S.D. 105, 271 N.W. 765) opinion which indicates that manslaughter in the second degree, as a public offense, depends exclusively on culpable negligence."

There the death was caused, as it was in State v. Richards, 84 S.D. 376, 171 N.W.2d 808, by beatings and blows to the head. That these statutes of long standing have been applied to many differing facts indicates they are not vague and

---

3. Of which Territory v. Bannigan, 1 Dak. 451 (432), 46 N.W. 597; State v. Hubbard, 20 S.D. 148, 104 N.W. 1120; State v. Stumbaugh, 28 S.D. 50, 132 N.W. 666; State v. Godlasky, 47 S.D. 36, 195 N.W. 832; State v. Denevan, 49 S.D. 192, 206 N.W. 927; and State v. Zobel, 81 S.D. 260, 134 N.W.2d 101, are representative, with opinions therein and herein cited.

do not violate the due process of law clauses of the Constitutions of either this State or United States.

Decisions of our sister states are not wanting. Wyoming has an involuntary manslaughter statute, § 9-205, W.C.S. 1945, of similar tenor as our SDCL 22-16-20 which was challenged as violating the constitutional provision guaranteeing due process of law. The court in an extended opinion sustained the statute. State v. Wilson, 76 Wyo. 297, 301 P.2d 1056. Oregon has a statute, ORS 163.040(3) which provides:

> "Every killing of a human being by the act * * * of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable * * * is manslaughter."

It, too, is a statute of many years standing, originating there in 1855 and taken word for word from the New York Code. The purpose was to " 'guard against all danger of omission of any case, and to include some that are anomalous'." It was referred to by the court in the same term defendant's brief ascribes to our statute as a reason for striking it down, that of a "catch-all" to encompass those killings which were not otherwise covered by statute and which were not justifiable or excusable. That court in State v. Harris, 241 Or. 224, 405 P.2d 492, sustained a conviction for manslaughter when the evidence, if believed, strongly indicated murder.

Defendant has cited no cases not here reviewed claiming to support his thesis, nor has our research discovered any. State v. Dove, 75 S.D. 460, 67 N.W.2d 917, involved a general clause that increased the kidnaping penalty from a second degree crime with a penitentiary sentence to an imposed death penalty, a concern this court has alluded to in Berdahl v. Gillis, 81 S.D. 436, 444, 136 N.W.2d 633, 637.

The propriety of convictions for second degree manslaughter under murder or first degree informations has been upheld in many of our opinions: State v. Hubbard, supra, first and second degree manslaughter held to be submitted to jury in murder charge; State v. Bute, 57 S.D. 609, 234 N.W. 605, conviction for second degree under first degree charge;

State v. Stumbaugh, supra, conviction for first degree under murder charge.

To summarize, there is no contention the homicide was either excusable or justifiable, so it must have been murder or one of the degrees of manslaughter. State v. Brech, 84 S.D. 177, 169 N.W.2d 242; here the jury was authorized to find the life of deceased was taken by defendant by means of shooting him and return a verdict of guilty of either first degree or second degree manslaughter. State v. Stumbaugh and State v. Zobel, both supra. The judgment must be affirmed.

All the Judges concur.