STATE of South Dakota, Plaintiff
and Appellee,

v.

Bradley Dean BLACK, Defendant
and Appellant.

No. 17551.

Supreme Court of South Dakota.

Argued May 27, 1992.

Decided Jan. 6, 1993.

Rehearing Granted Feb. 19, 1993.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Michael J. Butler of Butler and Nesson, Sioux Falls, for defendant and appellant.

SABERS, Justice.

Bradley Black (Black) was convicted of the first-degree murder of Robert Hymore (Hymore).[1] He was sentenced to life imprisonment without parole. Black's only claim on appeal is that the trial court erred by refusing lesser included instructions on first-degree manslaughter. We affirm.

1. Black was also originally charged with kidnapping, robbery, commission of a felony while armed and felony murder but these charges were dropped prior to trial.

## FACTS

On December 6, 1990, Black and Hymore met in a bar in Sioux Falls, South Dakota. Hymore had been drinking prior to the chance meeting with Black. After several hours of drinking and gambling together, the two decided to do some target shooting. Witnesses at the bar testified that before leaving, Black stated that he would "shoot anything that moved, even if it was alive." One witness testified she understood this statement to be a joke, and told Hymore "I wouldn't go, he might shoot you." The two left the bar, first going to an area near Brandon, South Dakota, and then to a farm in Lincoln County, South Dakota.

Black testified to the following sequence of events. During the drive between Brandon and the farm, Hymore's behavior was disoriented. Upon arrival at the farm, Black searched for something to use for target practice. He left the gun, a semi-automatic pistol, between the front seats. While Black was searching in the trunk, Hymore approached him with his pants down, holding his erect penis. After a brief struggle, Black broke free and headed for the driver's side door in order to get to the gun before Hymore could reach it. Hymore beat Black to the gun, but Black was able to knock the gun out of his hand. Black then grabbed the gun with his right hand. Hymore began to pull Black through the car toward the passenger door. Although Black claims no memory of pulling the trigger, Hymore was shot four times in the back of the head. Black claims Hymore "freaked out" on him and he had to defend himself.

Following the shooting, Black began a complicated attempt to cover up what had taken place, including an aborted attempt to dump Hymore's large body off the Platte–Winner bridge into the Missouri River. Black and a friend he enlisted to help him dispose of the body were stopped early the next morning in Chamberlain, South Dakota. The State claims Black concocted the "accidental shooting" theory only after realizing his friend agreed to talk to the Police. The friend testified that Black told him that someone had "freaked out" on him and he had to kill him, and that Black had "grabbed the victim by the back of the head and stuck his head out the window and he shot him in the back of the head."

The autopsy of Hymore's body revealed that his death was caused by four gunshot wounds to the back of his head. The wounds were "tightly spaced" in approximately one square inch. Three bullets followed essentially the same trajectory with at least two of the four shots being fired at point blank range. The autopsy also revealed semen stains in Hymore's underwear. Defendant claims these semen stains corroborate his defense. State argues that they are inconclusive because there was testimony that Hymore did not change his underwear daily and the time when the stains were deposited was undetermined.

## PROCEDURE

Black was charged with first-degree murder, which is a premeditated killing. Black claims he was entitled to lesser included offense instructions on first-degree manslaughter, which includes a killing without premeditation and an unnecessary killing while resisting a sexual assault. The trial court instructed the jury on justifiable homicide [2] but refused all of Black's requested instructions on first-degree manslaughter on the basis that they were not necessarily included offenses of first-degree murder.

## LESSER–INCLUDED INSTRUCTIONS

■ Black, as well as the State [3], is entitled to all "necessarily" included offense

---

**2.** The justifiable homicide instruction (Instr. No. 25) provided:

The taking of the life of another is justifiable when there is a reasonable ground to apprehend a design to commit a felony, and imminent danger of such design being accomplished. In order to constitute this defense, it is not neces-

sary that the danger actually exists, but only that there shall be reasonable grounds to apprehend the existence of such danger.

**3.** *See State v. Cook,* 319 N.W.2d 809 (S.D.1982), where the trial court instructed the jury that simple assault is a lesser included offense of aggravated assault. On appeal, this court stated:

instructions pursuant to SDCL 23A–26–8 (Fed.R.Crim.P. 31(c)).[4] Black claims the court erred by refusing his requested lesser included instructions on first-degree manslaughter because it is a necessarily included offense of first-degree murder.

In *State v. Waff*, 373 N.W.2d 18 (S.D. 1985), this court formally abandoned the previous line of decisions which held that first and second-degree manslaughter are automatically lesser included offenses within murder.[5] The court held that the "two-part test is now clearly the law in this state." *Id.* at 22 (citations omitted). "There are two tests that must be satisfied in determining whether the trial court should submit a lesser included offense instruction to the jury. The first is a legal test, the second is factual." *State v. Heumiller*, 317 N.W.2d 126, 132 (S.D.1982) (quoting *State v. Oien*, 302 N.W.2d 807, 808–09 (S.D.1981)). *See State v. Wall*, 481 N.W.2d 259, 263–64 (S.D.1992); *State v. Gillespie*, 445 N.W.2d 661, 663 (S.D.1989).

The legal test is met if (1) all of the elements of the included offense are lesser in number than the elements of the greater offense; (2) the penalty for the included lesser offense must be less than that of the greater offense; and (3) both offenses must contain common elements so that the greater offense cannot be committed without also committing the lesser offense. In order to meet the factual test, evidence must be presented which would support a conviction of a lesser charge.

*Wall*, 481 N.W.2d at 264 (citations omitted).

■ If the lesser offense passes both the legal and factual test, then the lesser-included instructions *must* be given.[6] A careful reading of SDCL 23A–26–8 notes that its language is permissive in nature, expanding upon the offenses that may be charged against a defendant. It is not restrictive. A failure to pass the test *does not preclude* the giving of the lesser-included instructions if, in the judge's discretion, the facts support the lesser-included instructions. *See Cook*, 319 N.W.2d at 813.

■ The *Waff* Court also concluded that such a test is not inconsistent with SDCL 23A–26–7, which provides:

Whenever a crime is distinguished by degrees, a jury, if it convicts an accused, shall find the degree of the crime of which he is guilty and include that finding in its verdict. When there is a reasonable ground of doubt as to which of two or more degrees an accused is guilty, he can be convicted of only the lowest degree.

*Waff*, 373 N.W.2d at 22–23. The *Waff* Court interpreted SDCL 23A–26–7 to mean "that if an instruction is given on first-degree manslaughter the jury must also be given an instruction on second-degree manslaughter[.]" *Id.* at 23. SDCL 23A–26–7 only requires an instruction upon the lesser degrees of crimes divided by degrees. It does not require nor prohibit a lesser-in-

Appellant's objection to the giving of the instruction on lesser included offenses is not controlling. It is the duty of the trial court to instruct the jury as to the law applicable to the case. The defense does not have the option of precluding the court from carrying out this duty in hopes of forcing an "all of nothing" verdict. Thus, the trial judge may instruct *sua sponte* on a lesser included offense if the evidence adduced at trial would warrant conviction of the lesser charge and if the defendant has been afforded fair notice of those lesser included offenses.

*Id.* at 813 (citations omitted) (emphasis in original).

4. SDCL 23A–26–8 (Fed.R.Crim.P. 31(c)) states:

A defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if such attempt is an offense.

5. In *Waff*, this court stated that:

It is true that *State v. Hubbard* [20 S.D. 148, 104 N.W. 1120] (1905) makes the statement that manslaughter is included in the charge of murder, but in view of our holding today that statement is no longer *invariably* true. Accordingly, if in a given case, such as the one before us, the evidence does not admit of an instruction of first-degree manslaughter, the dictates of *Hubbard* and of SDCL 23A–26–7 are inapplicable. *Waff*, 373 N.W.2d at 23 (emphasis added).

6. "Refusal by the trial court to give such an instruction would be reversible error." *Wall*, 481 N.W.2d at 264.

cluded instruction in cases NOT distinguished by degrees.[7]  *Id.*

The United States Supreme Court adopted a similar test for necessarily included offense instructions in *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1451, 103 L.Ed.2d 734, 746 (1989). The Court stated:

> [O]ne offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).[8]

The Court in *Schmuck* reviewed the history of this doctrine and in doing so, cited with approval *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896), as reflecting the "practically universal" practice of engaging "in a careful comparison of the statutory elements of murder and manslaughter to determine if the latter was a lesser included offense of the former." *Schmuck,* 489 U.S. at 720, 109 S.Ct. at 1452 (citation omitted).

▮ In South Dakota, murder and manslaughter are each separated into degrees, the elements of which are statutorily set. First-degree murder contains only two elements.[9]  Therefore, the elements of an offense, claimed to be necessarily included, must be a subset of these two elements. *See U.S. v. Horn,* 946 F.2d 738, 744 (10th Cir.1991); *U.S. v. Cavanaugh,* 948 F.2d 405, 409–10 (8th Cir.1991).  First-degree manslaughter contains three elements under SDCL 22–16–15 sections (1), (3) and (4), and four elements under section (2).[10]

> Because the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial, the elements approach permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly.  The objective elements approach, moreover, promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference.

*Id.* at 720–21, 109 S.Ct. at 1452–53.

As the Court noted in *Schmuck* at 716, 109 S.Ct. at 1450, the wording of Rule 31(c) *is not conclusive.*  While these reasons have some appeal, they are not so persuasive as to completely eliminate all of the trial court's discretion.  See text accompanying footnote 12.

---

**7.** Although the heading of SDCL 22–16–1 provides: "Homicide defined—Degrees of homicide," homicide is not divided by degrees.  Likewise, homicide is not necessarily a crime because, along with murder and manslaughter, it includes excusable and justifiable homicide.  *Since murder and manslaughter are separate crimes, each divided by degrees, SDCL 23A–26–7 does not apply and it was not necessary, under the terms of this statute, to instruct on manslaughter.*

**8.** The Supreme Court gave three reasons for adopting this "elements" or "subset" test.

First, the Court found that the wording of Rule 31(c), "although not conclusive," necessitates a comparison between the statutorily defined "offenses."  *Id.* at 716–17, 109 S.Ct. at 1450–51.  The Court also found that the wording of Rule 31(c), by not distinguishing requests for jury instructions from the State or the defendant, provides a mutuality of effect upon both sides by preventing either side from infringing on the defendant's right to notice of the charge(s) against him because the elements of any possible lesser included offense would already be contained in the indictment.  *Id.* at 717–18, 109 S.Ct. at 1450–51.

Second, the Court found that the history of Rule 31(c) allowed the jury to be instructed on only *necessarily* lesser included offenses.  *Id.* at 718, 109 S.Ct. at 1451 (citation omitted).  The Court also found that Rule 31(c) was intended to be a "restatement of 'pre-existing law' " which traditionally applied an elements test.  *Id.* at 720, 109 S.Ct. at 1452, (citation omitted).

Third, the Court found that this "subset" or "elements" test would be "far more certain and predictable" than an "inherent relationship" or "rational basis" test.  *Id.*

**9.** The elements of first-degree murder, SDCL 22–16–4, are:
> (1) a killing
> (2) with a premeditated design to effect the death of the person killed.

**10.** The elements of first-degree manslaughter, SDCL 22–16–15, are:
> (1) (a) a killing
> (b) without design to effect death
> (c) while engaged in the commission of a misdemeanor
> involving moral turpitude.
> (or)
> (2) (a) a killing
> (b) without design to effect death
> (c) in the heat of passion
> (d) in a cruel and unusual manner

Since first-degree manslaughter contains more elements than first-degree murder, it fails the first prong of the legal test. Additionally, SDCL 22-16-15 requires the crime be committed either (1) while committing a misdemeanor; (2) in the heat of passion *and* in a cruel and unusual manner; (3) with a dangerous weapon; or (4) unnecessarily *and* while resisting a crime or after the attempted crime failed. Therefore, first-degree manslaughter also fails the third prong of the legal test because it contains elements not found in first-degree murder. As a result, under our present statutory scheme, it is possible to commit first-degree murder without committing first-degree manslaughter.

Black was tried on a charge of first-degree murder only. The trial court ruled that first-degree manslaughter did not meet the legal test for a lesser-included offense of first-degree murder. The trial court did not reach the factual test and neither do we.

Although it would not be error to give the requested instructions, we hold that the trial court did not err in refusing defendant's lesser-included offense instructions under SDCL 23A-26-8 and the elements test of *Schmuck, Wall* and *Waff.* [11] It was within the judge's discretion whether or not the instructions should be submitted to the jury. The record fails to disclose an abuse of discretion by the trial court under these circumstances. *See* footnote 12.

We affirm defendant's conviction under these circumstances. To do otherwise would overrule at least 12 years of clear precedent in this court and "wreak havoc" in the trial courts. This would include the legal test as set forth above in *State v. Wall* as written by Justice Henderson. Similar holdings and statements of the legal test, which would be directly or indirectly overruled, would include:

| CASE | | AUTHOR |
|------|---|--------|
| *State v. Kafka,* 264 N.W.2d 702, 705 (S.D.1978) | — | Zastrow, J., concurring specially. |
| *State v. O'Connor,* 265 N.W.2d 709, 716 (S.D.1978) | — | Zastrow, J., concurring specially. |
| *State v. Poss,* 298 N.W.2d 80, 82–83 (S.D.1980) | — | Henderson, J. |
| *State v. Oien,* 302 N.W.2d 807, 808–09 (S.D.1981) | — | Fosheim, J. |
| *State v. Heumiller,* 317 N.W.2d 126, 132 (S.D.1982) | — | Fosheim, J. |
| *State v. Pickering,* 317 N.W.2d 926, 926 (S.D.1982) | — | Fosheim, J. |
| *State v. Cook,* 319 N.W.2d 809, 813 (S.D.1982) | — | Dunn, J. |
| *State v. Blakey,* 332 N.W.2d 729, 730–31 (S.D.1983) | — | Fosheim, J. |
| *State v. No Heart,* 353 N.W.2d 43, 46 (S.D.1984) | — | Morgan, J. |
| *State v. Jackson,* 371 N.W.2d 341, 344 (S.D.1985) | — | Wuest, Acting J. |
| *State v. Waff,* 373 N.W.2d 18, 22 (S.D.1985) | — | Wollman, J. |
| *State v. Woods,* 374 N.W.2d 92, 95–97 (S.D.1985) | — | Henderson, J. |
| *State v. Goodman,* 384 N.W.2d 677, 681–82 (S.D.1986) | — | Miller, Cir. J. |
| *State v. Reed,* 387 N.W.2d 10, 14–15 (S.D.1986) | — | Wuest, J. |
| *State v. Gregg,* 405 N.W.2d 49, 50–52 (S.D.1987) | — | Sabers, J. |
| *State v. Farmer,* 407 N.W.2d 821, 824 (S.D.1987) | — | Wuest, C.J. |
| *State v. Rich,* 417 N.W.2d 868, 870–71 (S.D.1988) | — | Sabers, J. |
| *State v. Disbrow,* 417 N.W.2d 873, 874 (S.D.1988) | — | Wuest, C.J. |

(or)
(3) (a) a killing
(b) without design to effect death
(c) by means of a dangerous weapon
(or)
(4) (a) a killing
(b) unnecessarily
(c) (i) while resisting an attempt by person killed to commit a crime

(or)
(ii) after such attempt shall have failed

11. As noted above, SDCL 23A-26-7 does not apply because "[t]he statute by its own terms applies only to crimes that are divided into degrees." *Waff,* 373 N.W.2d at 23.

| CASE | AUTHOR |
|---|---|
| *State v. Frey*, 440 N.W.2d 721, 725 (S.D.1989) | — Miller, J. |
| *State v. Gillespie*, 445 N.W.2d 661, 663–64 (S.D.1989) | — Wuest, C.J. |
| *State v. Red Fox*, 446 N.W.2d 69, 70–71 (S.D.1989) | — Per Curiam |
| *State v. Goodroad*, 455 N.W.2d 591, 593 (S.D.1990) | — Henderson, J. |
| *State v. Tapio*, 459 N.W.2d 406, 408–09 (S.D.1990) | — Morgan, J. |
| *State v. Wall*, 481 N.W.2d 259, 263–64 (S.D.1992) | — Henderson, J. |

Despite this affirmance, we encourage trial courts to give lesser-included instructions, even though not "necessarily" or technically included, where a common sense review of the facts indicates that it would be difficult to commit the greater offense without committing the lesser offense. This suggestion is intended to promote fair trials [12] and is not limited to cases involving murder, manslaughter, or other felonies. *See Cook*, 319 N.W.2d at 813.

WUEST, J., concurs specially.

HENDERSON, J., concurs in result.

MILLER, C.J., and AMUNDSON, J., dissent.

WUEST, Justice (concurring specially).

I concur with the majority opinion, except for the dicta in the last paragraph which cites *Cook* for the proposition that trial courts have discretion to give lesser included instructions. *State v. Cook*, 319 N.W.2d 809, 813 (S.D.1982). The dissent of Justice Amundson takes this discretion a step further by claiming the two-step test deprives trial courts of their *right* to exercise discretion.

I disagree with these arguments for two reasons. First, *Cook* does not hold that trial courts have such discretion—it directs trial judges to apply the legal and factual test to determine whether a lessor included offense should be submitted to the jury. *Id.* Second, "[d]iscretion is the power exercised by courts to determine questions to which no strict rule of law is applicable[.]"

*State v. Biggs*, 198 Or. 413, 255 P.2d 1055, 1059 (1953) (quoting *State v. Lewis*, 113 Or. 359, 230 P. 543, 544 (1924)).

Chief Justice John Marshall defined judicial discretion over a hundred and fifty years ago:

Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the court to follow it.

*Osborn v. United States Bank*, 22 U.S. (9 Wheat.) 738, 866, 6 L.Ed. 204, 234 (1824). The words of that distinguished jurist still hold true today—it is the duty of the court to follow the law.

We are a nation governed by law, not the caprice or whim of judges. We have, as the majority opinion notes, adopted a two-part test—a legal test and a factual test— each of which must be satisfied before a trial judge may submit a lesser included offense instruction to the jury. If the proposed lesser included offense does not meet the two-part test, the trial judge has no discretion to give the included instruction.

The discretion of a judge is said by Lord Camden to be the law of tyrants: it is always unknown, it is different in different men; it is casual, and depends upon constitution, temper, and passion. In the best, it is oftentimes caprice; in the

12. We are unable to say that Black's trial was unfair for at least two reasons. First, the trial court's instruction to the jury on justifiable homicide (*see* footnote 2) included a homicide committed while resisting an attempt to commit a felony, or some great personal injury to the accused. SDCL 22–16–35. Secondly, the trial court's instructions to the jury on first-degree murder required the element of intent. If even one of the jurors believed Black's version, that juror was required to follow the law as given in the instructions and find him not guilty because, either Black had reasonable grounds to apprehend the existence of danger, or the element of intent was not proven beyond a reasonable doubt.

worse, it is every vice, folly, and passion to which human nature is liable.

*Delno v. Market St. Ry. Co.*, 124 F.2d 965, 967 (9th Cir.1942).

To allow judges to give lesser included offense instructions that do not meet the two-part test submits the law to the mere whim of "human nature." Both the State and the defendant are entitled to impartial treatment. "Justice carries a pair of scales that are evenly balanced." Arthur L. Goodhart, "Lincoln and the Law," 50 A.B.A.J. 433 (1964). If a judge can give instructions which do not meet the rule of law, then different defendants can—and will—receive different treatment because of different judges. To include instructions not mandated by application of the test of law would make us a government of men rather than a government of law.

I am deeply concerned the dicta of the majority opinion and the dissent of Justice Amundson will lead our trial courts and the Bar into confusion and uncertainty. I advise trial judges continue to apply our established legal and factual test rather than enter the never, never land where each judge creates his own rules under the guise of judicial discretion. Substantive law cannot be left to the whim of a judge.

HENDERSON, Justice (concurring in result).

Although I concur in affirming the trial court, I reach the result by first applying the factual test. *See State v. Tapio*, 459 N.W.2d 406 (S.D.1990); *State v. Woods*, 374 N.W.2d 92 (S.D.1985), *cert. denied*, 495 U.S. 920, 110 S.Ct. 1952, 109 L.Ed.2d 314 (1990).

This jury heard all of the evidence. Having heard that Black fired four bullets into the brain of Robert Hymore at point blank range, the jury convicted Black of first degree murder. Van De Walle testified that Black told him that Black had grabbed Hymore by the back of the neck and stuck his head out of the window before killing him. Black absolutely admitted to Van De Walle that he fired four or five bullets into Hymore's head. Each bullet entered from the back of the head.

Black, accompanied by one Van De Walle, then transported the body of Hymore, some two hundred miles: To dump the body into the Missouri River and thereby hide it and the heinous crime.

Black claims Hymore made a homosexual pass at him. Evidence reflects that Black had lost several hundreds of dollars gambling that afternoon (between $800 and $1,000 so he stated) and was visibly surly, angry, mean-dispositioned, and threatened to "shoot anything that moved, even if it was alive." Homosexual pass? The record reflects nothing to suggest Hymore was homosexual. A divorced man, he had four children from a previous marriage. When murdered, he was living with his girlfriend, a lady by the name of Anita Farlow. Testimony disclosed that acquaintances, who knew Hymore, never saw Hymore display any type of behavior indicating that Hymore was a homosexual.

Essentially, under this set of facts, the trial judge refused to instruct the jury on the elements of first degree manslaughter. He rightfully did so. Although this decision was based upon the failure of the legal test, the trial court did listen to arguments concerning the facts and the application of the factual basis test. On page 834 of the record, Judge Bogue said, "Even if I were to find [that the legal test has been met], I would struggle with the factual basis." In *State v. Woods, supra*, writing for this Court, I expressed:

> The trial court does not have to instruct on matters not supported or warranted by the evidence. *State v. Fender*, 358 N.W.2d 248, 252 (S.D.1984); *State v. Huber*, 356 N.W.2d 468, 472 (S.D.1984); *Miller v. State*, 338 N.W.2d 673, 676 (S.D.1983); *State v. Chamley*, 310 N.W.2d 153, 155 (S.D.1981); *Oien*, 302 N.W.2d at 809; *State v. Curtis*, 298 N.W.2d 807, 810 (S.D.1980); *State v. Wilson*, 297 N.W.2d 477, 482 (S.D.1980); *State v. Feuillerat*, 292 N.W.2d 326, 334 (S.D.1980); and *State v. Bean*, 265 N.W.2d 886, 891 (S.D.1978). As stated above, this applies in homicide cases and *if the evidence does not admit or support an instruction on a lesser degree*

*of homicide, the trial court need not give it.* (Emphasis supplied mine).

*See,* footnotes 1 and 2, page 96; *State v. Heumiller,* 317 N.W.2d 126 (S.D.1982).

*Woods,* written in 1985, has been cited, with approval, by this Court ten times. The trial court's decision should be upheld.

In this state, it is no longer the law that the trial court, in all murder trials, must automatically instruct a jury as to all lesser degrees of homicide. Our rulings in *State v. Hubbard,* 20 S.D. 148, 104 N.W. 1120, 1121 (1905); *State v. Painter,* 70 S.D. 277, 17 N.W.2d 12, 13 (1944); *State v. Zobel,* 81 S.D. 260, 134 N.W.2d 101, 112 (1965); and *State v. Grooms,* 85 S.D. 532, 186 N.W.2d 889, 893 (1971) have been cast aside. *See,* writing of Chief Justice Roger Wollman in *State v. Waff,* 373 N.W.2d 18 (S.D.1985), Henderson, J., concurring, at 26, 28.

This Court has also held that when the evidence did not satisfy the factual test, the trial court did not err in refusing to give first degree manslaughter instructions where first degree murder instructions had been given. *Woods, supra; Waff, supra.* Either the defendant was guilty of the crime charged or he was not guilty of anything. *State v. Rich,* 417 N.W.2d 868 (S.D.1988); *State v. Pickering,* 317 N.W.2d 926 (S.D.1982); *State v. Feuillerat,* 292 N.W.2d 326 (S.D.1980); *State v. Kafka,* 264 N.W.2d 702 (S.D.1978).

I perceive the dissent of Justice Amundson as misapplying the instructional law in this state. The 1, 2, 3 and 1, 2, 3, 4 arguments suggests that this Court has followed a purely mechanistic application of the law. I disagree for, in my opinion, this Court has not done so.

Under the "elements test" or the law set forth in the above cases holding the trial court does not have to instruct on matters not supported or warranted by the evidence, *State v. Scholten,* 445 N.W.2d 30 (S.D.1989), there is no reversible error on jury instructions. *See also, State v. Bennis,* 457 N.W.2d 843, 846 (S.D.1990).

It is important to note that the trial court, via jury instruction no. 25, instructed the jury on justifiable homicide. Had the jury believed Black's story that he was justified (because of an alleged homosexual pass) to take the life of Hymore, the jury would have returned a verdict of not guilty. Black's defense on justifiable homicide was cast aside by the jury. Simply put, the jury did not believe his story. It held that Black's killing Hymore was not justifiable. Black must show that "under the evidence, the jury might and probably would have returned a different verdict if the requested instruction(s) had been given." *State v. Willis,* 370 N.W.2d 193, 200 (S.D.1985). Nor did the jury find that Black acted in self-defense as instructed by the trial court per instruction no. 26. Therefore, under the state of this evidence, Judge Bogue committed no reversible error.

Although the majority writing has not postured a thesis upon the following theory, and although the Chief Justice maintains that I have misperceived the legal issue herein, I hasten to point out that there are numerous decisions in this Court holding that it is well established that if the trial court reaches the correct result, even if for the wrong reason, its decision will still be affirmed on appeal. *Cowell v. Leapley,* 458 N.W.2d 514, 519 (S.D.1990); *State v. McCafferty,* 356 N.W.2d 159, 162 (S.D.1984); *State v. Marshall,* 264 N.W.2d 911, 916 (S.D.1978).

Notwithstanding any comments directed towards my special writing, our settled law is that the settled record is the sole evidence of the trial court's proceedings. *Pearson v. Adams,* 279 N.W.2d 674 (S.D. 1979). We, on this Court, should obtain a knowledge of the facts and procedure in a case. The settled record provides this information. A total background should be considered so that our judgment is not limited. I also note that beginning on page 830 of the settled record that both the prosecutor and defense counsel argued the factual basis of whether to include the lesser included offense instruction. This argument on the factual test continues for two more printed pages, *see,* pages 832 and 833. Therefore, the settled record buttresses this special writer's position that the trial court decided this case correctly, reaching the correct result. Repeatedly, this Court

has expressed that we would affirm on appeal if the trial court so acted. *Cowell, McCafferty, Marshall, supra.* It is obvious that the trial judge mulled the factual background of this case and the instructions that should be rightfully given. To express that the trial judge did not consider the facts at all, belies the record.

In conclusion, notwithstanding the writings of Chief Justice Miller and Justice Amundson, it is simply no longer the law in this state that a trial court, in all murder trials, must automatically instruct a jury as to all lesser degrees of homicide. Rather, the jury need not be given an instruction on a lesser degree of homicide if the evidence does not admit or support such an instruction. Note *Woods, supra,* and numerous cases cited thereunder.

MILLER, Chief Justice (dissenting).

I would reverse and remand for a new trial.

Under the ruling of the trial court, first-degree manslaughter can NEVER pass the legal test as a lesser included offense of first-degree murder. As stated by Justice Amundson in his dissent, that simply is not the law in South Dakota. The majority author recognizes what the trial court held but seems to dance around that holding, playing freely with rhetorical applications of the word "necessarily" and coupling this with what is evidently a legal determination that the factual test could have been met at trial. In my view, the majority author recognizes, and tacitly admits, the frailty of his argument when, in the last paragraph of the opinion, he pleads with trial judges to give "a common sense review of the facts." Justice Wuest's special writing most appropriately attacks the legal and intellectual weaknesses of that suggestion. "Ignore the law, but apply some common sense" seems to be the majority author's advice—I simply cannot buy it.

Although it may promote judicial economy "by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference,"

*Schmuck v. United States,* 489 U.S. 705, 721, 109 S.Ct. 1443, 1452–53, 103 L.Ed.2d 734, 749 (1989), *it is reversible error to fail to apply the factual test in a murder trial* since such a failure results in the conclusion that first-degree manslaughter can NEVER be a lesser included offense of first-degree murder.

I respectfully suggest that Justice Henderson's special writing goes even further than the majority writing when it ignores the legal test and instead applies the factual test *which the trial judge never applied.* I am of the opinion that the record simply does not support Justice Henderson's assertions that

> the trial judge mulled the factual background of this case and the instructions that should be rightfully given. To express that the trial judge did not consider the facts at all, belies the record.

I respectfully suggest it is this language which "belies the record." The trial transcript, at page 834, reveals that the trial court, in making its ruling, specifically stated:

> ... *I'm not going to rule on the factual basis* on this matter. I want this test to remain *solely,* in my determination, on the *legal portion* thereof, and that therefore, *manslaughter, even though our Court has not addressed it directly, is not a lesser includable offense of first degree murder.* (Emphasis added.)

The most that can be said about the trial proceedings is that "the trial court did listen to arguments concerning the facts and the application of the factual basis test." (Henderson, J., *supra*).

Justice Henderson correctly notes that "the trial court does not have to instruct on matters *not supported or warranted by the evidence." Woods,* 374 N.W.2d at 96 (emphasis added); *Scholten,* 445 N.W.2d at 32. The Eighth Circuit Court of Appeals has also stated recently that "it is well settled that a defendant is entitled to an instruction on any lesser included offense *if the evidence would permit a jury rationally to find him guilty of the lesser offense and to acquit him of the greater offense." United States v. One Star,* 979

F.2d 1319, 1320 (8th Cir.1992) (emphasis added). This court has also stated that "[w]here a request has been made to charge the jury on a lesser-included offense, *the duty of the trial judge is determined by the evidence." State v. Tapio,* 459 N.W.2d 406, 408 (S.D.1990) (emphasis added). I am convinced the trial judge did not meet his duty. It is clear that though he may have listened to trial counsel's arguments concerning the facts, the trial judge intentionally and purposefully failed to consider the factual test in his decision.

I adhere to the legal principal espoused "that if the trial court reaches the correct result, even if for the wrong reason, its decision will still be affirmed on appeal." (Henderson, J., *supra* ). However, as Justice Henderson notes: "Essentially, *under this set of facts,* the trial judge refused to instruct the jury on the elements of first degree manslaughter." (Emphasis mine.) We both conclude that this refusal to apply the factual test in this murder case is error. However, I believe this failure by Judge Bogue *is reversible error.*

Lastly, I must make clear that I agree with Justice Henderson's recitation that "it is simply no longer the law in this state that a trial court, in all murder trials, must automatically instruct a jury as to all lesser degrees of homicide." My writing today says nothing to the contrary. But, in a murder trial, *the trial judge must give* the defendant the benefit of *both* the legal and factual tests for lesser included offenses. *See Tapio,* 459 N.W.2d 406; *Schmuck,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734. We must not sit as "super judges," making decisions in the absence of a trial court's prior holdings.

It is crucial to observe that an analysis of the writings in this case makes it evident that a majority of this court (and arguably, the entirety of this court) believes the trial judge misapplied the legal test and erroneously failed to apply the factual test. Had the trial court applied the factual test, and therefore put this court in a position to reach the factual test, I could join Justice Henderson's writing. The trial court should have applied the factual test, but did not; because the trial court did not, this court should not.

AMUNDSON, Justice (dissenting).

As the majority notes, Black took the stand in his own behalf to explain to the jury his version of what occurred on this dismal day. Therefore, Black has admitted the killing of Hymore. This admission by Black and his other testimony clearly left one substantive issue for the jury to decide, namely, his mental state at the time of the shooting.[1]

Applying the legal/factual test in deciding whether or not a lesser included instruction should be given seems first to only require that a trial court have the ability to count to 1, 2, 3, then to 1, 2, 3, 4 and hold that, since the elements of the proposed lesser included instruction number 4, the defendant has no right to a lesser included instruction in a homicide case. In my opinion, this is nothing but a simplistic, mathematical test which deprives a trial court of the right to exercise its discretion after listening to all the evidence. The United States Supreme Court long ago held that a defendant in a homicide case was entitled to instruction on manslaughter in a murder case where the presence or absence of a mental state marked the boundary which separated the two crimes. *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). The majority states that the crimes of murder and manslaughter have been changed or modified by statute on numerous occasions since 1896. One aspect of the crimes which has not changed is the element of premeditated design in murder and its absence as an element in manslaughter. The boundary line between first-degree murder and first-degree manslaughter in South Dakota is premeditated design to effect the death of a person. In

---

**1.** Black's testimony was that he did not remember pulling the trigger, there was an unacceptable sexual advance on the part of Hymore, the shooting was accidental, the last thing he wanted was to cause the death of the decedent, and he did not take the decedent out to the country intending to kill him.

murder, you have such design whereas in manslaughter there is no design to effect the death of a person.

The majority concludes by suggesting that common sense indicates when premeditated design is the issue, a lesser included should be given. I would go a step farther and adopt the holding in *People v. Shaw*, 646 P.2d 375 (Colo.1982), where the defendant was charged with first-degree murder after deliberation, felony murder, robbery, and attempted robbery. The defendant at the conclusion of the case requested an instruction on reckless manslaughter and criminally negligent homicide. The request was denied. On appeal, the Colorado Supreme Court, in reversing, held:

> In *Crawford v. People*, 12 Colo. 290, 20 P. 769 (1888), this court reversed the defendant's second degree murder conviction due to the trial court's refusal to instruct on voluntary manslaughter and formulated what has since become basic doctrine:
>
>> "When there is any evidence whatever tending to establish a certain statutory grade of criminal homicide, and the court refuses to charge the jury with reference thereto, error is committed; but if there be a total absence of evidence relating to the particular grade disregarded, the charge cannot be successfully challenged on the ground of such omission.
>>
>> \* \* \* \* \* \*
>>
>> "By statute the accused in criminal cases is permitted to become a witness, and when once upon the stand all the ordinary rules of evidence apply to him. He is subject to cross-examination, his testimony may be impeached, the circumstances under which he testifies may be considered, and perjury on his part can be as readily disclosed as in the case of other witnesses. The jury ought to give his testimony such

credit and such weight as in their judgment shall, under all the circumstances, be proper. They may accept it as true or they may reject it as false. But, however incredible or unreasonable such testimony shall seem, the accused is entitled to an instruction upon the hypothesis that it may be true.

\*    \*    \*    \*    \*    \*

>> "We do not say that [manslaughter] should have been the verdict, or that the jury would have found differently had they been properly instructed. What we do say is that there was not an entire absence of evidence tending to establish the crime of manslaughter, and that defendant was entitled to an instruction with reference thereto. It is obviously impossible for us to hold that the error thus committed was without prejudice." *Id.* at 292–94, 20 P. at 770–71.

*Shaw*, 646 P.2d at 379.

The defendant's testimony in this case, although it may be improbable, unreasonable, or unbelievable, still provides evidence which if believed by a rational jury could result in a conviction of the lesser offense, namely, manslaughter in the first degree.[2] In fact, the State has previously argued to this court in *State v. Holloway*, 482 N.W.2d 306 (S.D.1992), that based on the evidence in that case the trial court did not err in giving a lesser included instruction on manslaughter even though the "elements test" was not met.

A reading of this court's decisions since the adoption of the legal/factual test on lesser included instructions in murder cases reveal that the giving or rejection of the proposed lesser included instruction rises or falls on the *evidence* and not the count. The majority suggests that disregarding the legal test and allowing manslaughter

---

**2.** In the recent Eighth Circuit decision of *United States v. One Star*, 979 F.2d 1319 (8th Cir.1992), the court reversed the trial court for having failed to grant defendant's request for an involuntary manslaughter lesser included instruction where defendant was charged with second-degree murder. The court held: "It is well settled that a defendant is entitled to an instruction on any lesser included offense *if the evidence* would permit *a jury* to find him guilty of the lesser offense and to acquit him of the greater offense." *Id.,* at 1320 (citations omitted) (emphasis added).

as a lesser included offense will overturn twelve years of precedent set by this court. This is simply not true. Of the decisions cited by the majority, which were actually homicide cases involving manslaughter instructions, not one was decided on the basis of the *legal* test. *See State v. Tapio,* 459 N.W.2d 406 (S.D.1990); *State v. Gregg,* 405 N.W.2d 49 (S.D.1987); *State v. Woods,* 374 N.W.2d 92 (S.D.1985); *State v. Waff,* 373 N.W.2d 18 (S.D.1985). In each of these cases, the legal test was ignored and the manslaughter instruction was excluded on the basis of the *evidence* or factual test. *Id.*

In *State v. Waff,* 373 N.W.2d 18, 22–23 (S.D.1985), where this court found no error in refusing to give the manslaughter instruction, the court stated:

> Without deciding whether either the offense of first-degree manslaughter or of second-degree manslaughter, as defined by SDCL 22–16–15 and SDCL 22–16–20, *supra,* satisfied the legal test, it is clear beyond peradventure that neither offense satisfied the factual test. . . .
>
> It is true that *State v. Hubbard* makes the statement that manslaughter is included in the charge of murder, but in view of our holding today that statement is no longer invariably true. Accordingly, if in a given case, such as the one before us, the *evidence does not admit of an instruction on first-degree manslaughter,* the dictates of *Hubbard* and of SDCL 23A–26–7 are inapplicable. (Emphasis added.)

This court next held in *State v. Woods,* 374 N.W.2d 92, 95–96 (S.D.1985), as follows:

It is no longer the law in South Dakota that in all murder trials, the trial court must automatically instruct the jury as to all lesser degrees of homicide. . . . If the *evidence* does not admit or support an instruction on a lesser degree of homicide, the trial court need not give it. . . .

\* \* \* \* \* \*

The trial court does not have to instruct on matters not supported or warranted by the *evidence.* . . . As stated above, this applies in homicide cases and if the *evidence* does not admit or support an instruction on a lesser degree of homicide, the trial court need not give it. (Citations omitted.) (Emphasis added.)

The evidence in this case demanded a manslaughter instruction.[3] The trial courts should not be rendered powerless by the mere count portion of the legal test when the evidence dictates otherwise.[4]

This case as submitted to the jury was a classic all or nothing decision. In other words, the jury could either find Black guilty of murder or not guilty of murder. As previously stated, Black admitted the shooting and there was no question that Hymore died from the shots fired by Black. The record is devoid of any finding by the trial court that there was no basis for the jury to rationally acquit Black of the charged offense. This is understandable, since the trial court adhered to the legal test by an accurate counting of elements. Admittedly, it could be argued that Black was in a more favorable position because if the jury found no premeditated design to cause the death of Hymore, Black would then have been acquitted. Jurors are asked to perform a difficult, demanding task when sitting in judgment of a fellow

3. The majority holding in this case seems to accept the State's argument that the prosecution can foreclose the opportunity to seek a lesser included instruction by draftsmanship in the Information. To this legal theory, I say no because the trial court has the discretion to sua sponte give a lesser included instruction if the *evidence* warrants it, notwithstanding the charge contained in the formal pleading. *See State v. Cook,* 319 N.W.2d 809 (S.D.1982).

4. This case is easily distinguishable from *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In that case, the

charge filed by government contained multiple counts of mail fraud. The defendant requested a lesser included jury instruction on the crime of tampering with an odometer. This case establishes whether a defendant in a murder/manslaughter contest will ever be able to have a lesser included instruction on manslaughter where the prosecution has elected to only charge murder. The authority established in the mail fraud/odometer tampering case should not foreclose a defendant's right to lesser included instruction in a murder case.

man. The admission of Black and the evidence involving the efforts of he and his companion to dispose of Hymore's body after the shooting certainly would have an impact on any twelve people called upon to perform this civic duty. I do not agree that Black was or could have been in a better position in this case based on the manner in which it was prosecuted by the state and agree with the holding in *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), where the United States Supreme Court held in a case dealing with the refusal to give a lesser included instruction:

> Moreover, it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.

412 U.S. at 212–13, 93 S.Ct. at 1997–98, 36 L.Ed.2d at 850 (emphasis in original).

It is easy to foresee a jury believing that Black was guilty of something. Yet, this jury was given only one option. Therefore, I would reverse and remand this case for a new trial, since Black did not receive a fair trial under this strict adherence to the legal/factual test where the evidence certainly warranted, if nothing else, an exception to the test.[5] *State v. Bennis*, 457 N.W.2d 843 (S.D.1990).

---

5. I wholeheartedly agree that the State and a defendant are entitled to impartial treatment as stated in Justice Wuest's special writing. On the other hand, the holding allows the prosecution to cut off the opportunity for the trial courts to even delve into impartiality and unbalances the scales.